Robert Ahdoot, SBN 172098
rahdoot@ahdootwolfson.com
AHDOOT & WOLFSON, PC
1016 Palm Avenue
West Hollywood, CA 90069
Tel: (310) 474-9111
Fax: (310) 474-8585

Greg F. Coleman*
greg@gregcolemanlaw.com
GREG COLEMAN LAW PC
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865)247-0080
Facsimile: (865) 522-0049

Daniel K. Bryson*
Dan@wbmllp.com
J. Hunter Bryson*
Hunter@wbmllp.com
WHITFIELD BRYSON & MASON LLP
900 W. Morgan St.
Raleigh, NC 27603
Telephone: 919-600-5000
Facsimile: 919-600-5035
* *pro hac vice* applications forthcoming

Attorneys for Plaintiffs,
RYAN HINDSMAN and
JAMES ANDREWS

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN HINDSMAN and JAMES ANDREWS, on behalf of themselves and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>GENERAL MOTORS LLC, a Delaware limited liability company,<br><br>    Defendant. | Case No.  3:17-cv-5337<br><br>**CLASS ACTION COMPLAINT AND COMPLAINT FOR DAMAGES**<br>**(Demand for Jury Trial)** |

Plaintiffs James Andrews and Ryan Hindsman ("Plaintiffs"), acting on behalf of themselves and all others similarly situated, bring this action for damages and equitable relief against Defendant General Motors LLC ("GM"):

## NATURE OF THE CASE

1.      GM designed, manufactured, distributed, marketed, sold, and leased Model Year 2010-2017 Chevrolet Equinox vehicles with 2.4-liter engines ("Class Vehicles" or "Vehicles") to Plaintiff and Class Members.

2.      Prior to 2010, GM knew that the Class Vehicles contained one or more design and/or manufacturing defects, including, but not limited to, defects contained in the Class Vehicles' engines that cause them to be unable to properly utilize the engine oil and, in fact, to improperly burn off and/or consume abnormally high amounts of oil (the "Oil Consumption Defect.")

3.      Motor oil functions as an essential lubricant for the moving parts in internal combustion engines.  It creates a film separating surfaces of adjacent moving parts to minimize direct contact, thereby decreasing heat caused by friction and reducing wear.  Motor oil also has important cleaning and sealing functions, and serves as an important medium for dissipating heat throughout the engine.  As a result, the Class Vehicles need the proper amount of engine oil in order for their engines and related parts to function properly and safely.

4.      The Oil Consumption Defect is a safety concern because it prevents the engine from maintaining the proper level of engine oil, causing excessive oil consumption that cannot be reasonably anticipated or predicted.  Therefore, the Oil Consumption Defect is unreasonably dangerous because it can cause engine failure while the Class Vehicles are in operation at any time and under any driving conditions or speeds, exposing the Class Vehicle drivers, their passengers, and others who share the road with them to serious risks of accidents and injury.

5.      Because the Oil Consumption Defect can cause the Class Vehicles to consume unacceptably high amounts of engine oil, the rate of oil consumption for some Class Vehicles can be as high as one quart of oil per 1,000 miles driven.   The Oil Consumption Defect thus requires the addition of substantial amounts of oil between scheduled oil changes and can even result in engine damage.  As a result of the Oil Consumption Defect, its potential safety hazards, and GM's refusal to

acknowledge and fix the problem, many consumers have resorted to purchasing an extra supply of oil and carrying it with them at all times when driving.

6.     Plaintiffs and Class Members reasonably expected that their Class Vehicles would not experience excessive oil consumption during foreseeable and normal usage, including, but not limited to, the expectation that the Class Vehicles would not require unreasonably frequent oil changes/additions between scheduled oil changes and that the Class Vehicles would not suffer from a dangerous defect that could cause the Class Vehicles to unexpectedly seize during operation, creating the potential for accidents and injuries.   These are the reasonable and objective expectations of consumers.

7.     Prior to purchasing the Class Vehicles, Plaintiffs and Class Members did not know that the Class Vehicles suffered from the Oil Consumption Defect and did not contemplate that the Class Vehicles' engines would be unable to prevent substantial amounts of oil from being consumed due to the defect contained therein, thereby requiring costly supplemental oil to be added between scheduled oil changes, as well as other related repairs that can cost hundreds to thousands of dollars.

8.     GM knew or should have known that the Class Vehicles are defective and suffer from the Oil Consumption Defect and are not fit for their intended purpose of providing consumers with safe and reliable transportation.    Nevertheless, GM actively concealed and failed to disclose the Oil Consumption Defect to Plaintiffs and Class Members at the time they purchased or leased their Class Vehicles and thereafter.

9.     GM knew of and concealed the existence of the Oil Consumption Defect contained in every Class Vehicle, along with the attendant dangerous safety problems and associated costs, from Plaintiff and Class Members at the time they purchased or leased their Class Vehicles and thereafter. GM's concealment caused Plaintiffs and Class Members to experience the Oil Consumption Defect throughout the life of the Class Vehicles, which includes use within the warranty period.   Had Plaintiffs and Class Members known at the time of sale or lease about the Oil Consumption Defect and the associated costs and/or the safety hazards described herein, Plaintiffs and Class Members would not have purchased the Class Vehicles or would have paid less for them.

CLASS ACTION COMPLAINT, CASE NO. 3:17-CV-5337

10.     Every Class Vehicle was sold or leased pursuant to express and implied warranties, including a Powertrain Limited Warranty that covers the cost of all parts and labor needed to repair a powertrain component, including the engine, that is defective in workmanship and materials within five years or 100,00 miles, whichever occurs first, calculated from the start date of the Basic Limited Warranty. The Limited Warranty Begins on the date in which the purchaser first put the vehicle into service. The Limited warranty transfers automatically with vehicle ownership during the warranty period.

11.     Moreover, despite notice of the Oil Consumption Defect from various internal sources, GM has not recalled the Class Vehicles to repair the defect, has not offered all of its customers a suitable repair or replacement free of charge, and has not offered to reimburse all Class Vehicle owners and leaseholders who incurred costs relating to the defect, including, but not limited to, costs related to inspections, diagnosis, repairs, and unreasonably frequent oil changes/additions between scheduled oil changes.

12.     As a result of their reliance on GM's omissions and/or affirmative misrepresentations, owners and/or lessees of the Class Vehicles have suffered ascertainable losses of money, property, and/or of value of their Class Vehicles.

**PARTIES**

**Plaintiff James Andrews**

13.     Plaintiff James Andrews is a California citizen who lives in Banning, California. Plaintiff Andrews purchased a used 2012 Chevrolet Equinox from used car dealer, Auto Source Car Sales, in Banning, California, on January 14, 2017 with 65,551 miles.  Plaintiff Andrews purchased his vehicle for $14,480 and uses it for personal, family, or household purposes.    This vehicle was designed, manufactured, sold, distributed, advertised, marketed, and warranted by GM.

14.     The oil level in Plaintiff Andrews' vehicle was sufficient at the time of purchase.

15.      On or around January 30, 2017, with approximately 66,500 miles on the odometer, Plaintiff Andrews noticed his vehicle would start to subtly rock back and forth when coming to a stop. In addition, Plaintiff Andrews started hearing a ticking noise during started during use of his vehicle.

CLASS ACTION COMPLAINT, CASE NO. 3:17-CV-5337

16.     In late February 2017, the subtle rock back and forth Plaintiff Andrews experienced when coming to a stop became worse, with the vehicle now bucking noticeably back and forth when coming to a stop.  In addition to the increased bucking, the vehicle began to make a louder ticking noise during use.  Concerned, Plaintiff Andrews had his local mechanic in Banning, California come to his home and check the oil level in the vehicle.  Plaintiff's mechanic found that over three-quarters of his vehicle's oil had already been consumed despite driving only 1,000 miles.

17.     Immediately thereafter, Plaintiff's mechanic found GM's Service Bulletin SB-10058791-504 online and decided he would take the vehicle to Diamond Hills Chevrolet Buick GMC in Banning, California, to see if the vehicle could be fixed.  A service technician looked up Plaintiff Andrews VIN number and told his mechanic there was no recall on the vehicle at that time.  No one at Diamond Hills Chevrolet Buick GMC disclosed the Oil Consumption Defect to Plaintiff Andrews or Plaintiff Andrews mechanic.

18.     Concerned about the Service Bulletin indicating his vehicle's tendency to burn through oil at excessively high rates, and online complaints indicating other Class Vehicle owners were experiencing the same issues, Plaintiff Andrews started checking the oil levels of his vehicle every three days to ensure the vehicle had sufficient oil.

19.     On April 14, 2017, with approximately 71,000 miles on his vehicle, Plaintiff Andrews had a regular oil change performed by his local mechanic.  Again, his mechanic noted the vehicle has consumed an excessive amount of engine oil since the vehicle's last oil change.  Dismayed, Plaintiff Andrews contacted GM directly about what could be done to fix his vehicle's high oil consumption.  Within days after contacting GM, Plaintiff Andrews received a notice from GM that if his vehicle exhibited excessive engine oil consumption (less than 2,000 miles per quart of engine oil) due to piston ring wear, GM would extend his warranty to remedy the issue within 7 years and 6 months of the date the vehicle was originally placed in service or 120,000 miles.  (A true and correct copy of GM's letter is attached hereto as Exhibit 1.)

20.     GM's letter states "[t]his letter is intended to make you aware that some 2012 model year Chevrolet Equinox vehicles, equipped with a 2.4L engine, may exhibit excessive engine oil consumption (less than 2,000 miles per quart of oil), due to piston ring wear.  If this condition is

present, an audible rattle or knock from the engine may be heard.  The engine oil pressure telltale may illuminate on the instrument panel or the following message may appear in the Driver Information Center: "Oil Pressure Low-Stop Engine."  (*Id.*)

21.     With GM's letter in hand and approximately 73,000 miles on his vehicle, Plaintiff Andrews went to Diamond Hills Chevrolet Buick GMC in Banning, California and asked them to fix the vehicle pursuant to the letter he received from GM.  In response, Mark Fradd, the service manager at Diamond Hills Chevrolet Buick GMC told Plaintiff  Andrews that he would need to bring his vehicle into the dealership every 500 miles for a total of 2,000 miles to have his oil level checked.  Plaintiff Andrews found this response unacceptable given the contents of GM's letter, his experiences driving the vehicle, and his mechanic's repeated notation of substantial oil consumption between checks.  Left with no choice, Plaintiff Andrews contacted GM's corporate offices.

22.     GM's Customer Assistance informed Plaintiff Andrews that the accepted rate of oil consumption for engines used in vehicles such as his is 2000 miles per 1 quart of oil.  GM's Customer Assistance insisted that all oil consumption tests had to be done at a Chevrolet Dealership.  (A true and correct copy of Plaintiff's correspondence with GM is attached hereto as Exhibit 2.)

23.     Currently, Plaintiff Andrews checks his oil every 2 to 3 days to ensure that his vehicle has sufficient oil.  His mechanic changes his oil every 2,000 miles to ensure that his vehicle has sufficient oil.  Both of these regular occurrences are time consuming activities.  Further, Plaintiff is afraid to take his vehicle on long trips in fear his vehicle could cease working correctly due to insufficient oil.  Plaintiff Andrews continues to experience the Oil Consumption Defect and has suffered damages as a result of the defect.

24.     The current mileage on Plaintiff Andrews' Class vehicle is 77,062.

**Plaintiff Ryan Hindsman**

25.     Plaintiff Ryan Hindsman is a California Citizen who lives in Concord, California. Plaintiff Hindsman purchased his class vehicle new from Winter Chevrolet, in Pittsburgh, California, in January 2010 for approximately $27,500 and uses it for personal, family, or household purposes. This vehicle was designed, manufactured, sold, distributed, advertised, marketed, and warranted by GM.

26.   The oil level in Plaintiff Hindman's class vehicle was sufficient at the time fo purchase.

27.   On or around May 2010, with approximately 5,000 miles on the odometer, Plaintiff Hindsman took his vehicle in for a routine oil change. Upon inspection, a service technician told Plaintiff Hindsman his was "bone dry inside". Startled, Plaintiff Hindsman then started manually adding oil to his Class Vehicle between scheduled oil changes.

28.   On or around February 2011, with approximately 18,000 on the odometer, Plaintiff Hindsman took his Class Vehicle to Concord Chevrolet in Concord, California, for a routine oil change. There, Plaintiff Hindsman indicated to the service technician that his vehicle was over consuming oil between routine oil changes. A service technician at Concord Chevrolet told Plaintiff Hindsman his vehicle would consume less oil if he used synthetic oil rather than conventional oil. Thereafter, Plaintiff Hindsman used synthetic oil when manually adding oil to his Class Vehicle between regular oil changes.

29.   Thereafter, in approximately February or March 2011, Plaintiff Hindsman noticed his Class Vehicle would make a "gurgling" sound while driving. Plaintiff Hindsman noticed this "gurging" sound would temporarily improve after manually adding oil to the Class Vehicle. However, this "gurgling" sound would resume again after routine use of the Class Vehicle.

30.   In approximately March 2014, Plaintiff Hindsman received a notice from GM regarding his Class Vehicle. The notice  indicated to Plaintiff Hindsman that if his vehicle exhibited excessive engine oil consumption (less than 2,000 miles per quart of engine oil) due to piston ring wear, GM would extend his warranty to remedy the issue within 7 years and 6 months of the date the vehicle was originally placed in service or 120,000 miles.  (A true and correct copy of GM's letter is attached hereto as Exhibit 2.)

31.   GM's letter states "[t]his letter is intended to make you aware that some 2012 model year Chevrolet Equinox vehicles, equipped with a 2.4L engine, may exhibit excessive engine oil consumption (less than 2,000 miles per quart of oil), due to piston ring wear.  If this condition is present, an audible rattle or knock from the engine may be heard.  The engine oil pressure telltale may

illuminate on the instrument panel or the following message may appear in the Driver Information Center: "Oil Pressure Low-Stop Engine." (*Id.*)

32.     In approximately spring 2015, with approximately 80,000 miles on his vehicle, Plaintiff Hindsman with the notice received by GM in hand, brought his Class Vehicle to Momentum Chevrolet California to have it repaired pursuant to the notice received by GM. Upon inspection and after a diagnostic, a technician determined that Plaintiff Hindsman's Class Vehicle had failed the oil consumption test. Thus, the technician determined the Class Vehicle was consuming excessive oil between regular scheduled oil changes. This technician promised Plaintiff Hindsman his vehicle would be repaired the following week.

33.     The following week, Plaintiff Hindsman returned to Momentum Chevrolet to have his Class Vehicle fixed pursuant to the failed diagnostic oil consumption test and the technician's promise to repair his Class Vehicle. Upon arrival at Momentum Chevrolet, Plaintiff Hindsman learned that the technician that had promised him to repair his Class Vehicle was no longer employed at Momentum Chevrolet. In addition, Plaintiff Hindsman was informed his Class Vehicle was to be re-tested for excessive oil consumption. Thereafter, Plaintiff Hindsman was informed his Class Vehicle "passed" its oil consumption test and no repairs were going to be done to his Class Vehicle.

34.     Since 2010, Plaintiff Hindsman has manually added approximately 12 quarts of oil per year to his Class Vehicle between regularly scheduled oil changes. Plaintiff Hindsman has resorted to buying oil in bulk quantities from Costco in order to save money on this routine endeavor. Plaintiff Hindsman's Class Vehicle continues to suffer from the Oil Consumption Defect.

35.     Today, Plaintiff Hindsman has 113,486 miles on his vehicle.

**Defendant**

36.     Defendant General Motors LLC is a Delaware limited liability company with its principal place of business located at 300 Renaissance Center, Detroit, Michigan, and is a citizen of the States of Delaware and Michigan.  The sole member and owner of General Motors LLC is General Motors Holding LLC.  General Motors Holdings LLC is a Delaware limited liability company with its principal place of business in the State of Michigan.

37.     GM, through its various entities, including Chevrolet, designs, manufactures, markets, distributes, and sells its vehicles in this District and multiple other locations in the United States and worldwide. GM and/or its agents designed, manufactured, and installed the GM engine systems in the Class Vehicles. GM also developed and disseminated the owner's manuals, warranty booklets, advertisements, and other promotional materials pertaining to the Class Vehicles.

## JURISDICTION AND VENUE

38.     This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual Class Members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and Members of the Proposed Class are citizens of states different from Defendant.

39.     This Court may exercise jurisdiction over GM because, through its business of distributing, selling, and leasing the Class Vehicles in this District, GM has established sufficient contacts in this District such that personal jurisdiction is appropriate.

40.     Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Specifically, Plaintiff Hindman's Class Vehicle was purchased in this District. (Plaintiffs' counsel's Declaration, as required under California Civil Code section 1780(d), is also attached hereto as Exhibit 3.)

## FACTUAL ALLEGATIONS

41.     For years, GM designed, manufactured, distributed, sold, and leased the Class Vehicles. It has sold, directly or indirectly through dealers and other retail outlets, millions of Class Vehicles throughout the United States.

42.     The Class Vehicles contain one or more design and/or manufacturing defect, including, but not limited to, the Oil Consumption Defect.

43.     GM learned of the Oil Consumption Defect prior to 2010 through sources not available to Class Members, including, but not limited to: (1) pre-release testing data; (2) early consumer complaints about the Oil Consumption Defect to GM and its dealers about the Class Vehicles, as well as other earlier model year versions of such vehicles; (3) testing conducted in response to those

complaints; and (4) aggregate data from GM dealers, including dealer repair orders and high warranty reimbursement rates that can cost up to several thousand dollars for each class vehicle;.

44.     The Oil Consumption Defect was so prevalent in 2011 Chevrolet Equinox models that GM issued a Service Bulletin, SB-10058791-504 (the "Service Bulletin"), to aid repair technicians who encountered 2011 Class Vehicles with the Oil Consumption Defect.  (A true and correct copy of the Service Bulletin is attached hereto as Exhibit 4.)

45.     In the Service Bulletin, GM acknowledges "[s]ome 2011 model year Chevrolet Equinox and GMC Terrain vehicles, equipped with a 2.4L engine, may exhibit excessive engine oil consumption (less than 2,000 miles per quart of engine oil), due to piston ring wear."  (*Id.*)

46.     In the Service Bulletin, GM details parts required to complete the repair for the Oil Consumption Defect:

| Part Number | Description | Quantity/Vehicle |
|---|---|---|
| 19303450 | Piston Kit | 1 |
| 12637166 | Gasket Kit, Cylinder Head | 1 |
| 12609291 | Gasket Kit, Camshaft Cover | 1 |
| 12635447 | Seal, Chain Package, Timing | 1 |
| 12635427 | Chain Assembly, W/Pmp And Balr Shf | 1 |
| 12649233 | Tensioner Asm - W/Pmp & Balr Shf Chain | 1 |
| 24435052 | Gasket, Engine Front Cover | 1 |
| 12602379 | Seal, Fuel Pump Housing (Oring) | 1 |
| 12608374 | Pipe Asm, Fuel Feed Inter | 1 |
| 12584041 | Seal, Cr/Shf Front Oil | 1 |
| 11589123 | Bolt Asm, Hx Hd W/Con Spr Washer | 1 |
| 11588844 | Bolt, Cm/Shf Posn Actr | 2 |
| 12605566 | Filter, Oil | 1 |
| 19293000 | Oil, Engine, AC Delco DEXOS1 5W30 | 5 |
| 90537293 | Screw Schraube (Connecting Rod) | 8 |
| 88864346 | Sealant, RTV | 2 |
| 90537336 | Guide, Balr Chain | 1 |
| 12346290 | Coolant, Engine, Dexcool Antifreeze | 1 |

47.     Further, in the Service Bulletin, GM requires that an oil consumption test be conducted in order to determine if a full replacement of pistons and rings is required. Specifically, GM notes:

- If the oil consumption test indicates that the rate of consumption is less than 1 quart (0.946L) of oil every 2,000 miles (3,200 km), note the oil consumption rate and the date that the ECM was reprogrammed. No further action is required.

- If the oil consumption test indicates that the rate of consumption is greater than 1 quart (0.946 L) of oil every 2,000 miles (3,200 km), note the oil

consumption rate, date that the ECM was reprogrammed and replace the pistons and rings.

48.     GM had and continues to have a duty to disclose the Oil Consumption Defect and the associated out-of-pocket repair costs to Plaintiffs and Class Members because: (1) the defect poses an unreasonable safety hazard; (2) GM had and continues to have exclusive knowledge and/or access to material facts about the Class Vehicles and engines that were and are not known to or reasonably discoverable by Plaintiffs and Class Members; and (3) GM has actively concealed the defect from its customers.

49.     Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced the Oil Consumption Defect.  Complaints filed by consumers with the NHTSA and posted on the Internet demonstrate that the Oil Consumption Defect is widespread.  These complaints illuminate GM's awareness of the Oil Consumption Defect and its potential danger (note that spelling and grammar mistakes remain as found in the original):

- NHTSA Complaint:    [2012 Chevy Equinox] WE BUY THIS CAR FROM CHEVROLET COMPANY ON NOVEMBER 14,2011.

  SINCE THAT TIME THE CAR WAS NOT IN OFTEN USE. UP TO ONE YEAR IT IS WAS IN THE STORAGE

  WHEN WE BEGAN TO USE IT REGULAR WE NOTE THAT THE ENGINE HAS SOME FACTORY DEFECT, THE ENGINE OIL IS OFTEN DID NON RECEIVE TO EVEN 5000 MILES, AT THE 2500 MILES ESTIMETELY, WE WERE FORCE TO ALWAYS CHANGE OIL, THE OIL COLOR OF THE ENGINE WAS ALWAYS VERY BLACK AS DIRTY, WE ALWAYS WERE WONDERING, WHY THE COLOR OF THE ENGINE OIL IS TURNS VERY BLACK, LIKE WE DID NOT CHANGED IT FOR LONG TIME.

- NHTSA Complaint:     [2012 Chevy Equinox] WAS TOLD BY MY MECHANIC THE VEHICLE WAS BURNING OIL. FOUND OUT IN MAY 2017 THAT CHEVY IS AWARE OF A DEFECTIVE PISTON RING PROBLEM THAT CAUSES THIS. THEY HAVE BEEN AWARE SINCE AT LEAST 2015. WAITED 2 YEARS TO NOTIFY ME BY MAIL. WHEN I WENT TO A DEALER TO HAVE PROBLEM FIXED I WAS TOLD VEHICLE HAS TOO MANY MILES ON IT. IT WOULD NOT HAVE HAD TOO MANY MILES HAD I BENN NOTIFIED 2 YEARS                                                                  AGO!

CLASS ACTION COMPLAINT, CASE NO. 3:17-CV-5337

- NHTSA Complaint:   [2012 Chevy Equinox] BOUGHT USED AND THEN STARTED NOTICING OIL DISAPPEARING. TOOK TO DEALER, OIL CONSUMPTION TEST DONE, DEALER SAYS NORMAL USE. NO HELP FROM THE DEALER AT ALL. CONSUMPTION GOT WORSE, WENT FROM 2 QUARTS TO 4 QUARTS BETWEEN OIL CHANGES. IN THE MEANTIME HAD TO REPLACE CATALYTIC CONVERTER AND A CRACKED EXHAUST MANIFOLD AND NOW HAVE A CHECK ENGINE LIGHT INDICATING O2 SENSOR PROBLEM, GAS MILEAGE DROPPING TOO. AFTER RESEARCHING, THESE PROBLEMS SEEM TO BE CAUSED BY THE OIL USE ISSUE. ENGINE PROBABLY NEEDS NEW RINGS AND PISTONS($2500 AT THE DEALER) BUT OTHER INTERNAL DAMAGE MAY BE PRESENT SO COST MAY BE EVEN MORE. I FOUND ON THE INTERNET THAT GM HAD EXTENDED WARRANTY FOR THIS ISSUE BUT ONLY UP TO 7 YRS OR 120K MILES. SO, I AM OUT OF LUCK AND DEALER DID NOT MENTION THIS AS THIS STARTED WHILE STILL UNDER 120K MILES. CONSULTED A HONEST MECHANIC FRIEND AND HE SAYS IT WOULD BE CHEAPER TO REPLACE THE ENGINE. HE QUOTED $1800 FOR ENGINE AND LABOR, TURN KEY JOB, WITH A ONE YEAR WARRANTY ON EVERYTHING. I TRUST HIM. ONLY CHOICE IS TO REPLACE ENGINE OR GET RID OF THE CAR.

- NHTSA Complaint:   [2012 Chevy Equinox] THIS VEHICLE HAS KNOWN OIL CONSUMPTION ISSUES. IN APRIL 2016 THE VEHICLE WAS LURCHING AND SHAKING. DURING SERVICE OF THE VEHICLE THEY STATED THE OIL WAS LOW, WHICH HAS BEEN ON ONGOING ISSUE. WE WERE ADVISED TO BRING IT BACK IN AUGUST FOR AN OIL CONSUMPTION TEST. WE TOOK IT IN FOR THE OIL CONSUMPTION TEST. NOW IN MAY 2017 WE ARE EXPERIENCING THE SAME ISSUES. INTERESTINGLY ENOUGH THE DEALERSHIP NOW HAS NO RECORD OF THE OIL ISSUES, INCLUDING THE OIL CONSUMPTION TEST. THE DEALERSHIP RUMMAGED THROUGH THE GLOVE COMPARTMENT AND STATED THE VEHICLE WAS ONLY GETTING OIL CHANGES EVERY 6000. IN FACT, NOT ALL TO THE OIL CHANGE RECEIPTS GO IN THE GLOVE COMPARTMENT. WE BELIEVE GM IS ATTEMPTING TO HIDE THE ISSUE. ULTIMATELY THE VEHICLE WILL LURCH AND CAUSE PERSONAL INJURY OR PROPERTY DAMAGE.

- NHTSA Complaint: [2012 Chevy Equinox] TL* THE CONTACT OWNS A 2012 CHEVROLET EQUINOX. WHILE DRIVING 55 MPH, THE VEHICLE RATTLED AND MADE A HOST OF NOISES, WHICH INDICATED THAT THERE WAS NO OIL IN THE VEHICLE. THE CONTACT STATED THAT TWO QUARTS OF OIL WERE PLACED IN THE VEHICLE, BUT IT PREMATURELY DISSIPATED BEFORE THE INTENDED MILEAGE MARK. THE CONTACT STATED THAT

11

OIL WAS ADDED TO THE VEHICLE THREE TIMES IN A SHORT PERIOD OF TIME. THE VEHICLE WAS TAKEN TO THE DEALER WHERE IT WAS DIAGNOSED THAT THERE WAS AN OIL CONSUMPTION FAILURE. THE VEHICLE WAS NOT REPAIRED, BUT THE CONTACT MADE AN APPOINTMENT WITH THE DEALER. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 91,000.

- NHTSA Complaint: [2012 Chevy Equinox] ON APRIL, 13 2017, MY WIFE WAS EXITING THE HIGHWAY ON THE WAY HOME FROM WORK. THE VEHICLE IMMEDIATELY SLOWED AND SHUT DOWN NEARLY CAUSING HER TO BE RUN OVER BY A SEMI-TRACTOR BEHIND HER. BECAUSE THE CAR COULD NOT BE RE-STARTED, I HAD IT TOWED TO MY USUAL MECHANIC. HIS DIAGNOSIS SHOWED IT HAD A TIMING CHAIN FAILURE WHICH TORE UP THE UPPER END OF THE MOTOR. IN HIS EXPERIENCE SUCH DAMAGE WAS THE RESULT OF OIL ISSUES. THIS CAME AS A GREAT SHOCK TO MEASURE I REGULARLY CHANGE THE OIL EVERY 3000 MILES. I WENT HOME THAT NIGHT AND BEGAN TO RESEARCH THIS PROBLEM AND HAVE FOUND THAT THIS IS NOT A RARE OCCURRENCE WITH THIS MOTOR. I WOULD HAVE TO ADD FROM 1-3 QUARTS OF OIL BETWEEN CHANGES BUT BECAUSE THERE WERE NO BULLETINS OR RECALLS I WAS TOLD I WOULD JUST HAVE TO DEAL WITH IT. SO I GUESS I NEED TO KNOW HOW MANY OF THESE VEHICLES HAVE TO DIE IN TRAFFIC OR PEOPLE HAVE TO DIE OR BE INJURED BEFORE SOMEONE TAKES NOTICE. I WILL HAVE TO REPLACE MY MOTOR (OVER $5000) AND GM KNOWS THESE PROBLEMS EXIST. IT WAS JUST A MATTER OF TIME. AND TO ADD INSULT TO INJURY, GM EXPECTS ME TO HAVE THE VEHICLE TOWED TO THEIR FACILITY AT MY EXPENSE SO THEY CAN CONFIRM THE DIAGNOSIS. IF THE DIAGNOSIS IS CONFIRMED, THEN I'LL HAVE TO TOW IT BACK TO MY GUY SO HE CAN FIX IT. ANOTHER $200 BUCKS. ONCE AGAIN, DOESN'T ANYONE MONITOR THE INTERNET ABOUT THIS STUFF? PEOPLE GET SO FRUSTRATED WHEN DEALING WITH LARGE CORPORATIONS, THEY HAVE NO CHOICE BUT TO SHARE THEIR STORIES WITH INDEPENDENT SOURCES. AND GM SURELY WON'T INCUR ADDITIONAL EXPENSES WITHOUT GOVERNMENT SCRUTINY. WE'VE LEARNED THAT THE HARD WAY. I JUST WANT THEM TO DO THE RIGHT THING. ADMIT IT WAS A PROBLEM-PLAGUED MOTOR AND FIX IT. THANK YOU FOR                               YOUR                               TIME.

- NHTSA Complaint: [2012 Chevy Equinox] GOES THROUGH 4 QUARTS OF OIL BETWEEN OIL CHAGES WHICH ARE DONE EVERY 3 THOUSAND MILES. OIL LIGHT DOES NOT COME ON WHEN YOU ARE 3 QUARTS LOW.

- NHTSA Complaint: [2012 Chevy Equinox] TL* THE CONTACT OWNS A 2012 CHEVROLET EQUINOX. THE CONTACT STATED THAT THE CHECK OIL ENGINE WARNING INDICATOR ILLUMINATED. THE CONTACTED ASSUMED THAT THE OIL NEEDED TO BE CHANGED. THE VEHICLE WAS TAKEN TO THE DEALER WHERE IT WAS DIAGNOSED AS EXCESSIVE OIL CONSUMPTION. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE ISSUE. THE FAILURE MILEAGE WAS 94,000.

- NHTSA Complaint: [2012 Chevy Equinox] CHECK ENGINE LIGHT CAME ON. CAR HAD BEEN IDLING ROUGH AND WOULD ALMOST STALL OUT AT RED LIGHTS. ALSO MADE A TICKING NOISE WHEN PRESSING ON THE ACCELERATOR AT ABOUT 20-25 MPH. I TOOK IT TO THE MECHANIC AND HE FOUND THE OIL LEVEL LOW. PERFORMED AN OIL CHANGE AND CLEARED THE DIAGNOSTIC CODE. HE ALSO GAVE ME INFORMATION PERTAINING TO THIS EXCESSIVE OIL CONSUMPTION BULLETIN. NOW I WILL HAVE TO CHECK MY OIL LEVEL AND MAKE SURE TO GET AN OIL CHANGE EVERY 3000 MILES.

- NHTSA Complaint: [2013Chevy Equinox] USING WAY TO MUCH OIL. VERY DISAPPOINTED. I BUY A CAR TO KEEP LONG TERM. PRETTY OBVIOUS THIS PROBLEM WAS WELL KNOWN BY AUTOMAKER. I WAS NEVER NOTIFIED. WILL NEVER BUY A GM AGAIN!!!!

- NHTSA Complaint: [2013Chevy Equinox] I HAD 100,000 MILES ON MY CHEVY EQUINOX AND IN DECEMBER WITH OUT WARNING THE ENGINE BLEW UP. I HAD RECENTLY HAD A OIL CHANGE BUT WAS TOLD THE ENGINE BARELY HAD ANY OIL. I HAD ARRIVED AT A DOCTORS OFFICE WAS THERE FOR A HOUR AND WHEN I WENT TO START MY CAR IT WAS COMPLETELY DEAD. I HAD TO REPLACE THE ENGINE.

- NHTSA Complaint: [2013Chevy Equinox] TL* THE CONTACT OWNS A 2013 CHEVROLET EQUINOX. WHILE DRIVING AT AN UNKNOWN SPEED, A LOUD ABNORMAL TICKING SOUND EMITTED FROM THE VEHICLE WITHOUT WARNING. THE VEHICLE WAS TAKEN TO A DEALER WHERE IT WAS DIAGNOSED THAT THERE WAS NO OIL IN THE VEHICLE. THE TECHNICIAN PERFORMED AN OIL CHANGE AND COMPRESSION TEST EVERY 1,000 MILES. THE CONTACT WAS INFORMED THAT THE PISTON IN THE ENGINE FAILED AND NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED, BUT THE FAILURE RECURRED. THE VEHICLE WAS TAKEN TO AN INDEPENDENT MECHANIC WHERE THE TECHNICIAN STATED THAT THE VEHICLE WAS BURNING OIL RAPIDLY. THE VEHICLE WAS NOT REPAIRED. ON ANOTHER OCCASION, THE

13

VEHICLE FAILED TO SHIFT GEARS PROPERLY. THE VEHICLE WAS TAKEN TO THE DEALER WHERE IT WAS DIAGNOSED THAT THE TRANSMISSION NEEDED TO BE REPLACED. THE TRANSMISSION WAS REPAIRED WITH UNKNOWN PARTS. THE CONTACT ALSO STATED THAT THE WINDSHIELD WIPERS FAILED TO OPERATE INTERMITTENTLY. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 33,000.

- Online Complaint: I had the exact same issues as everyone else. The 2012 Equinox started to sound like an old Model T and would die at red lights. I took to our mechanic and he said there was no oil in the car! He called the Chevy rep for us which came to look and told him we needed a new engine because we let it run with no oil. Our mechanic said well I change their oil every 5,000 miles so I know that's not true. The rep said they need to be changing every 1,000 miles! We could not believe it so I called Detroit. GM said this was normal and my husband should be putting oil in it all the time. We went with a brand new engine because were told if we put an old one in the same thing would happen again. Once its paid off it will be gone! We will never buy another Chevrolet again! Now my daughter drives it, we taught her how to check the oil and add if needed! OMG REALLY????

- Online Complaint I had 2 oil consumption tests done in 2015 before 100,000 miles and was told both times that my car "met the specs". I have to travel around with quarts of oil in my car because I constantly have to check the oil and fill it up.

  I recently received a letter from Chevrolet stating that they now acknowledge an oil consumption problem with this model year Equinox. My problem is I now have 138,000 miles and the fix is for vehicles with less than 120,000 miles. Neither my car dealership (Anoka MN) or Chevrolet are willing to fix the problem because I now have over 120,000 miles, even though I was having the problem below 100,000 miles.

  I am definitely angry about this and am going to go to the top to address this issue. I'd like to know why 120,000 miles is the "magical number" for mileage. I am looking for a new vehicle and will not buy an Equinox and will not by a Chevrolet. I feel I have not been dealt with fairly.

- Online Complaint I BOUGHT A 2012 CHEVROLET EQUINOX WITH APPROX 2000 MILES AT TIME OF PURCHASE. AROUND 20,000 MILES I NOTICED IT USING OIL BETWEEN OIL CHANGES. TOOK IT TO CHEVROLET IN 2015, TOLD THEM THE PROBLEM. THEY REPLACED THE SEAL WITH OIL FILTER. THE LAST YEAR IT HAS STALLED, ENGINE KNOCK AND STILL USING MORE OIL. I GOT A LETTER MAY 2017 SAYING I NEED TO TAKE THE EQUINOX TO CHEVROLET DEALER IF I HAVE ANY PROBLEMS

14

CLASS ACTION COMPLAINT, CASE NO. 3:17-CV-5337

STATED IN THE LETTER, WHICH I HAVE AND STILL DO. THEY TOLD ME I HAD TO DRIVE IT 500 MILES, BRING IT BACK TO DO A ENGINE OIL PRESSURE TEST. AM STILL DRIVING IT. AFRAID TO BUT VERY WORRIED AND CONCERNED ABOUT THIS PROBLEM.

- <u>Online Complaint</u> The problem started around late 2015 had almost 100,000 miles on the car started using more oil than usual. Didn't think there was a problem but it got worse as time went on started adding two quarts of oil between oil changes. Now I'm up to 3 quarts of oil between oil changes I didn't realize there was a problem until I got a letter from GM saying that they would repair the problem. But now I have a 148000 on the car and it's out of warranty, so now what do I do.

- <u>Online Complaint</u> I own a 2012 Equinox LS. I bought the vehicle used with only $25,000 miles. At around $35,000 miles the timing chain had to be replaced. Shortly after I had to start an oil consumption test, the vehicle was not running well and the engine was ticking. No oil on the dipstick and vehicle was not even close to the next oil change due. I'm now at $44,000 miles and still doing the oil consumption test.

  This time the Engine is knocking very loudly, no oil on dipstick again, yellow bubbly fluid and the smell of gas. Dealer tops it off - down 3 quarts this time. Come back again between $1,500 and $2,000 miles.

  I was told by the dealership that GM has a special warranty for the engine in the 2012 Equinox because they are aware of the problem. I was told the pistons are probably bad - and this was said to me when we first started the oil consumption test, but I need to do this test in order to prove to GM there is a problem. Hoping this is true.

  At this point I'm very aggravated and worried the engine will go one day while I'm driving.

- <u>Online Complaint</u> I purchased my 2012 Equinox new, late in 2011. It now has just over 80,000 miles. I have done all routine maintenance on the vehicle but a couple days ago the check engine light came on... so I brought it in for service at my dealer. I was told that my vehicle had NO oil... nothing was registering on the dip stick at all! I was told that this is a prevalent problem with this make and model... that I needed to check my oil every 1000 miles now and that I may need to get my pistons etc.. replaced. Estimate...$2500.00 ! That was yesterday... and today the same check engine light is on. OnStar diagnosis today... same problem. In reading the same problem over and over again on this site, something needs to be done and there needs to be a recall!

- <u>Online Complaint</u> I bought this car about 2 years ago and for some reason every time I check the oil, the oil is low, even after an oil change. This is ridiculous. I just don't understand how a car consumes oil. I took it to the

dealership and they don't understand why it does that. I took to the mechanic to check for leaks, nothing. So where the hell is the oil going if its not leaking? I wish I knew this before I bought this car because I see big problems with this in the future because my wife drives this car and she doesn't know anything about cars. She takes my kids to daycare every morning. I keep up with all maintenance that needs to be done, but I have a feeling my heads are going blow or something bad is going to happen if this                 problem             is             not             resolved.

- Online Complaint We purchased a used 2012 Chevrolet Equinox used in early 2015 with a little over 27,000 miles showing on the odometer and were well pleased with vehicle at the time. About a thousand miles later, I was checking the oil and noticed it was low...had to add about 1/2 quart or so to top it off. I thought this was unusual since it just had a fresh change when we bought it. When I changed the oil about three thousand miles later, it was almost a quart low then. The engine now has a little over 45,000 miles on it and I'm having to add about 1-2 quarts in between oil changes, which is ridiculous for a modern engine. Searching through the internet tonight, I'm seeing this is a common issue for these engines that is being blamed on a faulty engineering piston / ring / timing chain design. Has anyone else had any luck getting GM to stand behind their product and correct the problem or am I just stuck with keeping a case of oil around all the time? I'm going to make it my life's calling to tell everyone about this and warn them off this vehicle. We've always bought Ford products in the past and I was hesitant about buying a Government Motors product, wished now that had trusted my gut on this purchase.

- Online Complaint  Do not buy this vehicle. First day I bought it we had to get the timing chain replaced. The check engine light stays on. A part that had to do with the gas had to be replaced. Now I am dealing with the engine oil consumption issue. BTW the warranty is up at 100,000 mine is at            128,000.        I'm        burning        a        quart        a        week.

- Online Complaint This car uses excessive oil. I drive several miles a day. I have mentioned this to the local dealer and they gave me a list of items to "fix" which cost several thousand dollars. I have to monitor my own oil because the oil light does not come on when it is real low. It does come on when it is time for the oil to be changed. I have owned several Chevrolet vehicles but this one has caused me the most problems. I have called and there does not appear to be a recall or legitimate explanation as to why the car uses so much oil. I do not have a leak on the ground.

- Online Complaint Since the day I bought this vehicle, it has eaten oil. I drive the car about 100 miles a day and have to add at least 2 quarts a week. I have spoken to other Equinox owners and they all seem to have the same    issue.    Around    a    quart    for    every    1000    miles.

- Online Complaint This car has used a quart of oil every 1000 miles from day one....mentioned to my mechanic at regular scheduled oil changes and

16

CLASS ACTION COMPLAINT, CASE NO. 3:17-CV-5337

was always told it was normal. Upon looking into my constant complaint my mechanic recommended to file a complaint as this oil consumption seems to be a big problem. This should be recalled if Chevy was reputable. This is the second Chevy and probably the last I will purchase, as much as it cost to purchase a nice vehicle you should not have to deal with these big issues from day one. Engine should be recalled and replaced       ,      not      at      the      owners      expense.

- <u>Online Complaint</u> Wife was driving to work and car stopped on highway wouldn't start. She called me crying because she loves that car. Got it to the local dealership and said it had no oil. Told them there is no way that I just checked it a few days ago and topped it off. They tell me those engines are bad for going through oil and that the warranty won't fix the problem because all my paper work got thrown away. If GM knows about the oil problem in these wouldn't you think they would make it right? GM is garbage vehicles, don't buy anything GM.

- <u>Online Complaint</u> We just found out that the Equinox is known for burning excess oil. We never expected to have to check the oil frequently on a new vehicle. The engine light came on so my husband checked the oil, as it was due for an oil change, and there was no oil on the dipstick! He immediately took it the next morning to the dealership in Washington, IL. They told him that GM is aware of the problem and will replace the engine. How long have we been driving it with no oil in it? It doesn't say that the oil level is low. The engine has to be ruined! We won't be buying another Chevy.. We have to check the oil every 1,000 miles until the next oil change. If it qualifies as a problem we will get a new engine. On a fairly new car...Really??

- <u>Online Complaint</u> Suddenly I noticed a rattling sound that got worse over time. I was leaving work when a co-worker heard the noise, came over and popped the hood to check the oil level. The stick was dry! He asked me to go into the shop (I work at a dealership Not Chevrolet) so he could put some oil in for me. He put in two quarts and said come in tomorrow for a more thorough check. Engine was down three quarts. Gave me a complete oil change and sent me on my way.

  Here it is Feb and the same thing happened. Down four quarts of oil! Taking it to Chevy for the inevitable run around. I've dealt with them before for other issues. Never a solution. The service writers always give me the feeling that I am someone to avoid like the plague and I get never a solution . It's all in my head. Never again will I buy a Cherolet. #mycheysucks

- <u>Online Complaint</u> I purchased this 2012 Chevy with intentions of it being my last car. I normally purchase foreign cars because I strongly believe in the engines. This car burns all of the oil after an oil change in less than 30 days. I have my car serviced on 4/17/2015 and after checking oil before a road trip on 5/11/2015 it was barely on dipstick. After driving to Atlanta

17

CLASS ACTION COMPLAINT, CASE NO. 3:17-CV-5337

less than 300 miles I had to add more oil. Using synthetic blend gets expensive. I would never recommend this car to anyone. The dealer is not at fault but Chevy is because they have received numerous complaints. They claim bad oil rings and can be repaired for approx. $2500

- <u>Online Complaint</u> We noticed our engine was rattling and decided we should check the oil. It was down 2 quarts so we added oil and since it was about time for an oil change, we had it changed. We are now 3,000 mile into this oil change and have already added oil. We will be contacting the dealership to see it there is a fix for this that isn't going to cost us an arm and a leg. There is now 72,332 miles on this engine and we us Royal Purple              Performance              synthetic              oil.

- <u>Online Complaint</u> I was a victim of the excessive oil consumption problems that, I now understand are common with the Chevy Equinox. I did not know that the oil was low, which I had changed approx 4000 miles before. I first became aware of the problem when my engine would stop each time I stopped at an intersection. I was on the way to my repair garage when I heard a rather loud noise coming from the engine compartment. Pull over to the side of the road and called AAA.

  Car was towed to my normal service garage. My mechanic could not help so I had the car towed to Lawrence Chevrolet in Mechanicsburg, Pa. A diagnostic check was made and the dealership said that I needed a new engine and that my warranty would not cover the cost of the repairs. Estimated costs to me would be about $6000. I did not authorized the dealership to fix the vehicle due to the cost. Now looking for another way to get the problem fixed.

- <u>Online Complaint</u> I will never buy another Chevy in this lifetime. I will also let everyone I come in contact with know about this issue. My 2012 Chevy Equinox (JUNK) has about 1,500 miles on the new Dexos (Recommended Oil) It sounds like a diesel, dies at red lights, and if I check the oil level there isn't one! Problem here? Absolutely! Will Chevy cover this under their "100,000 mile powertrain warranty? NO! Is this false advertisement on their part? YES! My advice to everyone out there. DO NOT BUY A CHEVY OR ANY OTHER VEHICLE THEY ARE AFFILIATED WITH! CHEVROLET IS JUNK!!!! Thank you for reading! Rant over because it is a waste of my breath to talk any more about this auto                                                        maker!!!!

- <u>Online Complaint</u> The car uses about 1-2 quarts between oil changes, which Chevy recommends at 7,500 miles (using synthetic oil). Every oil change they need to put in 1-2 quarts. Chevy states it is "normal" for their cars to use oil, as much as 1 quart every 2,000 miles (and that's a quote from a Chevy service representative). I have been driving for over 40 years      and      have      never      had      a      car      use      that      much      oil.

- Online Complaint Purchased this vehicle and assured by the dealer that I was getting a great deal. I travel ALOT and use my personal vehicle for it. I was in the habit of checking my oil dipstick level every few fill ups. I took it in to the dealer to have it looked at when I noticed that the oil consumption was about a quart every 1000 miles. I was told then that "Yea, you have to keep an eye on your oil level and check it frequently".

  My complaint is that if it is known that the engine consumes a quart of oil every 1000 miles, why is it NOT in the manual? Why did the dealer NOT tell me that this is a known problem when I bought it? Why does the manual tell you to change the oil every 4 - 5 k miles? By the time you go to change the oil you have been out of oil and have damaged the engine. I am a mechanical tech and you can not possibly tell me that this is an expected issue for an engine. Why hasn't Chevy installed an oil level sensor    to    tell    the    owner    that    the    oil    level    is    low?

  I cant wait to get out of this vehicle and will not buy another Chevy due to the way I have been treated as to this. I have been treated as if it is MY fault. I have 95,000 miles on it. That would be about 70 quarts of oil added to it. It is not the cost as much as it is what damage has been done to this engine from this. The car is in the shop right now for stalling. My regular mechanic says it is the cam position sensor that usually does this when the oil gets sludgy due to being low occasionally.

50.     Despite its knowledge of the Oil Consumption Defect, GM's policy when owners or lessees of Class Vehicles complain to GM specifically about that defect, is only to tell the customer to bring the vehicle in every 500 miles for an oil check.

51.     Customers have reported the Oil Consumption Defect in the Class Vehicles to GM directly and through its dealers.  GM is fully aware of the Oil Consumption Defect contained in the Class Vehicles.  Despite this, GM refuses to disclose and actively conceals the existence and nature of the Oil Consumption Defect from Plaintiff and Class Members.  Specifically, GM has:

a)  failed to disclose, at and/or after the time of purchase, any and all known material defects or material nonconformities of the Class Vehicles, including the Oil Consumption Defect and, *inter alia*, the frequent supplemental oil costs between regularly scheduled oil changes;

b)   failed to disclose at the time of purchase that the Class Vehicles and their engines were not in good working order, were defective, and were not fit for their intended purpose; and

c)   failed to disclose or actively concealed the fact that the Class Vehicles and their engines were defective as a result of the Oil Consumption Defect, despite the fact that GM learned of such defects prior to the first Class Vehicles being sold.

52.   GM has caused Plaintiffs and Class Members to expend money at its dealerships or other third-party repair facilities and/or to take other remedial measures related to the Oil Consumption Defect in the Class Vehicles, such as having additional oil containers in the Class Vehicles at all times.

53.   GM has not recalled the Class Vehicles to repair the Oil Consumption Defect, and has not offered to reimburse Class Vehicle owners and lessees who incurred costs relating to excessive oil consumption and related problems.

54.   Plaintiffs and Class Members are reasonable consumers who do not reasonably expect their Class Vehicles to require the addition of several quarts of oil between regularly scheduled oil changes.

55.   Plaintiffs and Class Members reasonably expected that GM would not sell or lease Class Vehicles with known defects, such as the Oil Consumption Defect, and that it would disclose any such defects to its consumers before they purchased or leased Class Vehicles.  Plaintiffs and Class Members did not expect GM to conceal the Oil Consumption Defect, or to continually deny its existence.

56.   Consequently, Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

57.   As a result of the Oil Consumption Defect, the value of the Class Vehicles has diminished, including without limitation the resale value of the Class Vehicles.

**TOLLING OF THE STATUTE OF LIMITATIONS**

58.     Because the Oil Consumption Defect cannot be detected until the Class Vehicles have been driven and begin to consume excessive oil, Plaintiffs and Class Members were not reasonably able to discover the problem until after purchasing or leasing the Class Vehicles, despite their exercise of due diligence.

59.     In addition, even after Class Members contacted GM and/or its authorized dealers for vehicle repairs concerning the defective Class Vehicles, Plaintiffs and Class Members were routinely told by GM and/or its authorized dealers that the Class Vehicles were not defective and that consumption of high amounts of oil between scheduled oil changes was normal.

60.     Therefore, any applicable statute of limitation has therefore been tolled by GM's knowledge, active concealment, and denial of the facts alleged herein.  GM is further estopped from relying on any statute of limitation because of its concealment of the defective nature of the Class Vehicles and their engines.

**CLASS ACTION ALLEGATIONS**

61.     Plaintiffs bring this lawsuit individually and as a class action on behalf all others similarly situated pursuant to Federal Rules of Civil Procedure ("Rule") 23(a), (b)(2), and/or (b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

62.     The Class and Sub-Class are defined as:

Nationwide Class:

All current and former owners or lessees of 2010 through 2017 model year Chevrolet Equinox equipped with a 2.4 liter engine ("the Nationwide Class").

California Sub-Class:

All Members of the Nationwide Class who reside in the state of California and who purchased or leased their vehicles in the state of California ("the California Sub-Class").

21

63.     Excluded from the Class and Sub-Classes are: (1) GM, any entity or division in which GM has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiffs reserve the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

64.     <u>Numerosity</u>: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  The Class Members are readily identifiable from information and records in GM's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles of various states.

65.     <u>Typicality</u>: The claims of the representative Plaintiffs are typical in that Plaintiffs, like all Class Members, purchased and/or leased a Class Vehicle designed, manufactured, and distributed by GM with the Oil Consumption Defect.  Plaintiff, like all Class Members, has been damaged by GM's misconduct in that, *inter alia*, they have incurred or will continue to incur the cost of purchasing motor oil to replace the oil consumed by his defective engine.  Furthermore, the factual bases of GM's misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and negligent misconduct resulting in injury to all Class Members.

66.     <u>Commonality</u>: There are numerous questions of law and fact common to Plaintiffs and Class Members that predominate over any individual questions.  These common legal and factual issues include the following:

      a)  whether the Class Vehicles and their engines are defectively designed or manufactured such that they are not suitable for their intended use;

      b)  whether the fact that the Class Vehicles suffer from the Oil Consumption Defect would be considered material by a reasonable consumer;

c) whether, as a result of GM's concealment or failure to disclose material facts, Plaintiff and Class Members acted to their detriment by purchasing Class Vehicles manufactured by GM;

d) whether GM was aware of the Oil Consumption Defect;

e) whether the Oil Consumption Defect constitutes an unreasonable safety risk;

f) whether GM breached express warranties with respect to the Class Vehicles;

g) whether GM has a duty to disclose the defective nature of the Class Vehicles and the Oil Consumption Defect to Plaintiffs and Class Members;

h) whether Plaintiffs and Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction; and

i) Whether GM violated the consumer protection statutes of California when it sold to consumer Class Vehicles that suffered from the Oil Consumption Defect.

67. <u>Adequate Representation</u>: Plaintiffs will fairly and adequately protect the interests of Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

68. <u>Predominance and Superiority</u>: Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of GM's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for GM's misconduct. Absent a class action, Class Members will continue to incur damages, and GM's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

CLASS ACTION COMPLAINT, CASE NO. 3:17-CV-5337

**FIRST CAUSE OF ACTION**
**Breach of Written Warranties under the Magnuson-Moss Warranty Act**
**15 U.S.C. § 2301, *et seq.***
**(On behalf of the proposed Nationwide Class)**

69.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

70.     Plaintiffs bring this cause of action individually and on behalf of the Nationwide Class against GM.

71.     Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301(3).

72.     GM is a "supplier" and "warrantor" within the meaning of 15 U.S.C. § 2301(4)-(5).

73.     The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

74.     GM's express warranties are each a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

75.     GM extended a 3-year/36,0000 mile New Vehicle Limited Warranty with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner or lessee.  GM further extended a 7.5-year/120,000 mile Extended Warranty to Plaintiffs by letter.  (*See, e.g.*, Exhibit 1.)

76.     GM breached these express warranties by:

    a)  Selling and leasing Class Vehicles with engines that were defective in material and workmanship, requiring repair or replacement within the warranty period; and

    b)  Refusing and/or failing to honor the express warranties by repairing or replacing, free of charge, any defective component parts.

77.     GM's breach of express warranty has deprived Plaintiffs and Class members of the benefit of their bargain.

78.     The amount in controversy of the Plaintiffs' individual claims meet or exceed the sum or value of $50,000.00, and there are over 100 class members.

79.     GM has been afforded a reasonable opportunity to cure its breach of written warranties, including, when Plaintiffs and Class Members brought their vehicles in for diagnosis and repair of their engines.

80.     As a direct and proximate cause of GM's breach of written warranties, Plaintiffs and Class members sustained damages and other losses in an amount to be determined at trial.  GM's conduct damaged Plaintiffs and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorneys' fees and/or other relief as appropriate.

**SECOND CAUSE OF ACTION**
**Violation of the California Consumers Legal Remedies Act**
**Cal. Civ. Code § 1750,** *et seq.*
**(On behalf of the proposed California Sub-Class)**

81.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

82.     Plaintiffs bring this cause of action individually and on behalf of the California Sub-Class against GM.

83.     GM is a "person" as defined by Cal. Civ. Code § 1761(c).

84.     Plaintiffs and Class Members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

85.     The Class Vehicles that GM marketed and sold constitute "goods" as defined by Cal. Civ. Code § 1761(a) and (b).

86.     Plaintiffs' and Class Members' purchases of the Class Vehicles constituted "transactions," as defined by Cal. Civ. Code § 1761(e).

87.     Plaintiffs' and Class Members' purchases of the Class Vehicles were for personal, family, and household purposes as meant by Cal. Civ. Code § 1761(d).

88.     Venue is proper under Cal. Civ. Code § 1780(d) because a substantial portion of the transactions at issue occurred in this District.  (*See* Exh. 4.)

89.     GM deceived consumers in that it misrepresented that the Class Vehicles were free of defects as alleged above, when in fact they had the Oil Consumption Defect.  Further, GM knew of the

Oil Consumption Defect prior to selling the Class Vehicles and actively concealed this defect from consumers.

90.     GM's misrepresentations, active concealment, and failures to disclose violated the California Consumers Legal Remedies Act ("CLRA") in the following manner:

a.     In violation of Section 1770(a)(5), GM misrepresented that the vehicles had characteristics, benefits, or uses that they did not have (free of defects when in fact they contained the Oil Consumption Defect);

b.     In violation of Section 1770(a)(7), GM misrepresented that the vehicles were of a particular standard, quality, and/or grade when they were of another (free of defects when in fact they contained the Oil Consumption Defect);

c.     In violation of Section 1770(a)(9), GM advertised the vehicles with an intent not to sell them as advertised (free of defects when in fact they contained the Oil Consumption Defect);

d.     In violation of Section 1770(a)(14), GM misrepresented that the vehicles conferred or involved rights, remedies, or obligations that they did not have (free of defects when in fact they contained the Oil Consumption Defect); and

e.     In violation of Section 1770(a)(16), GM misrepresented that the vehicles were supplied in accordance with previous representations when they were not (free of defects when in fact they contained the Oil Consumption Defect).

91.     GM's misrepresentations and nondisclosures regarding the Class Vehicles never disclosed at the time of purchase were material to Plaintiffs and Class Members because a reasonable person would have considered them important in deciding whether or not to purchase the vehicles and because GM had a duty to disclose the truth about the Oil Consumption Defect.

92.     Plaintiffs and Class Members relied upon GM's material misrepresentations and nondisclosures, and had Plaintiff and Class Members known the truth about the Oil Consumption Defect they would not have purchased the Class Vehicles or not have paid as much for the vehicles.

93.     As a direct and proximate result of GM's material misrepresentations and nondisclosures, Plaintiffs and Class Members have been irreparably harmed.

94.     On behalf of the California Sub-Class, Plaintiffs seek injunctive relief in the form of an order enjoining Defendant from making such material misrepresentations and failing to disclose or actively concealing its aforementioned practices.  Plaintiffs also seeks attorneys' fees and costs.

95.     In accordance with Cal. Civ. Code § 1782(a), on July 26, 2017, Plaintiffs' counsel served GM with notice of the CLRA violations by certified mail, return receipt requested.

96.     As GM has failed to provide appropriate relief for its CLRA violations within 30 days of receipt of Plaintiffs' notification letter, Plaintiffs also seek compensatory and exemplary damages as permitted by Cal. Civ. Code §§ 1780 and 1782(b).

**THIRD CAUSE OF ACTION**
**Violations of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On behalf of the proposed California Sub-Class)**

97.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

98.     Plaintiffs bring this cause of action individually and on behalf of the California Sub-Class against GM.

99.     California Business & Professions Code § 17200, *et seq.* ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

100.    GM knew that the Class Vehicles and their engines suffered from an inherent defect that caused them to consume unusually high amounts of oil, were defectively designed or manufactured, and were not suitable for their intended use.

101.    In failing to disclose the Oil Consumption Defect, GM knowingly and intentionally concealed material facts and breached its duty not to do so.

102.    GM was under a duty to Plaintiffs and Class Members to disclose the defective nature of the Class Vehicles and their defective engines because:

    a)  GM was in a superior position to know the true state of facts about the safety defect in the Class Vehicles and their engines;

b) GM made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and their engines; and

c) GM actively concealed the defective nature of the Class Vehicles and their engines from Plaintiffs and Class Members.

103. The facts concealed by GM to Plaintiffs and Class Members are material in that reasonable persons would have considered them to be important in deciding whether to purchase GM's Class Vehicles, or to pay less for them. Had Plaintiffs and Class Members known that the Class Vehicles and their engines suffered from the Oil Consumption Defect, they would not have purchased the Class Vehicles or would have paid less for them.

104. GM concealed the Oil Consumption Defect even after Class Members began to report problems. GM continues to cover up and conceal the true nature of the problem by asserting that consuming quarts and quarts of oil between regularly scheduled oil changes is normal.

105. GM has violated and continues to violate the UCL's prohibition against engaging in "unlawful" business acts or practices, by, among other things:

• Violating the CLRA;

• Violating the MMWA; and

• Violating the Song-Berveley Consumer Warranty Act.

106. GM also violated the unlawful prong of the UCL by failing to honor the terms of its express and implied warranties with Plaintiffs and Class Members, as alleged herein.

107. GM's acts, omissions, and conduct also violate the unfair prong of the UCL because GM's acts, omissions, and conduct, as alleged herein, offended public policy and constitutes immoral, unethical, oppressive, and unscrupulous activities that caused substantial injury, including to Plaintiffs and Class Members. The gravity of GM's conduct outweighs any potential benefits attributable to such conduct and there were reasonably available alternatives to further GM's legitimate business interests, other than GM's conduct described herein.

108. By failing to disclose and actively concealing the Oil Consumption Defect, GM engaged in a fraudulent business practice that is likely to deceive a reasonable consumer.

109.     As a direct and proximate result of GM's unfair and deceptive practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

110.     GM has been unjustly enriched and should be required to make restitution to Plaintiffs and the California Sub-Class pursuant to §§ 17203 and 17204 of the UCL.

**FOURTH CAUSE OF ACTION**
**Breach of Implied Warranties and Song-Beverly Consumer Warranty Act California Civil Code § 1790, *et seq.***
**(On behalf of the proposed California Sub-Class)**

111.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

112.     Plaintiffs bring this cause of action individually and on behalf of the California Sub-Class against GM.

113.     GM was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.  GM knew or had reason to know of the specific use for which the Class Vehicles were purchased.

114.     GM provided Plaintiffs and Class Members with implied warranties that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold.

115.     However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles and their engines contained the Oil Consumption Defect.  Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

116.     GM impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  These implied warranties included, among other things: (i) a warranty that the Class Vehicles and their engines were manufactured, supplied, distributed, and/or sold by GM were safe and reliable for providing transportation and would not consume an abnormally high amount of oil between scheduled oil changes; and (ii) a warranty that the Class Vehicles and their engines would be fit for their intended use while the Class Vehicles were being operated.

29

117.    Contrary to the applicable implied warranties, the Class Vehicles and their engines, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation.   Instead, the Class Vehicles are defective, including but not limited to the defective design and/or manufacture of their engines that suffer from the Oil Consumption Defect alleged herein.

118.    GM's actions, as complained of herein, breached the implied warranties that the Class Vehicles were of merchantable quality and fit for such use in violation of Cal. Civ. Code §§ 1791.1 and 1792.

**FIFTH CAUSE OF ACTION**
**Common Law Breach of Express Warranties**
**(On behalf of the proposed Nationwide Class)**

119.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

120.    In the course of selling the Class Vehicles, GM expressly warranted in writing that the vehicles were covered by certain warranties, including the Class Vehicles' Limited Warranties and GM's express warranty such as that it provided to Plaintiff.  (*See* Exhibit 1.)

121.    GM breached its express warranties to repair defects in materials and workmanship of any part supplied by GM.  GM has not repaired, and has been unwilling to reasonably repair, the Oil Consumption Defect.

122.    Furthermore, the express warranties to repair defective parts, fail in their essential purpose because the contractual remedy is insufficient to make Plaintiffs and Class Members whole and because GM has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

123.    Accordingly, recovery by Plaintiffs is not limited to the express warranties of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

124.    Also, as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranties and were inherently defective, and GM wrongfully and fraudulently misrepresented and/or concealed material facts

regarding the vehicles.  Plaintiffs and Class Members were therefore induced to purchase the Class Vehicles under false and/or fraudulent pretenses.  The enforcement under these circumstances of any limitations whatsoever precluding the recovery of incidental and/or consequential damages is unenforceable.

125.   Moreover, many of the damages flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to GM's fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' remedies would be insufficient to make Plaintiffs whole.

126.   GM was provided notice of these issues by numerous complaints, including Plaintiffs' pre-suit correspondence and numerous other customer complaints regarding the Oil Consumption Defect before or within a reasonable amount of time after the allegations of the defect became public.

127.   As a direct and proximate result of GM's breach of express warranties, Plaintiffs and Class Members have been damaged in an amount to be determined at trial.

## RELIEF REQUESTED

Plaintiffs, individually and on behalf of all others similarly situated, request the Court enter judgment against GM, and accordingly requests the following:

a) An order certifying the proposed Class and Sub-Class and designating Plaintiffs as named representatives of the Classes and designating the undersigned as Class Counsel;

b) A declaration that GM is financially responsible for notifying all Class Members about the defective nature of the Class Vehicles and their engines;

c) An order enjoining GM from further deceptive distribution, sales, and lease practices with respect to their Class Vehicles; to remove and replace Plaintiff and Class Members' engines with a suitable alternative product; and repair all other damages to the Class Vehicles caused by the defective engines;

d) A further order enjoining GM from the conduct alleged herein, including an order enjoining GM from concealing the existence of the Oil Consumption Defect during distribution, sales, and advertisements, as well as during customer and warranty service visits for the Class Vehicles;

e) An award to Plaintiffs and Class Members of compensatory, actual, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

f) A declaration that GM must disgorge, for the benefit of Plaintiffs and Class Members, all or part of the ill-gotten profits it received from the sale or lease of their Class Vehicles, or make full restitution to Plaintiffs and Class Members;

g) An award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5 and all other applicable laws;

h) An award of pre-judgment and post-judgment interest, as provided by law;

i) Any and all remedies provided pursuant to the Song-Beverly Act, including California Civil Code § 1794;

j) Leave to amend the Complaint to conform to the evidence produced at trial;

k) A recall of all Class Vehicles; and

l) Such other relief as may be appropriate under the circumstances.

CLASS ACTION COMPLAINT, CASE NO. 3:17-CV-5337

1

**DEMAND FOR JURY TRIAL**

2

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a trial by

3

jury as to all matters so triable.

4

5

Dated: September 14, 2017                      AHDOOT & WOLFSON, PC

6

7

_____
8

Robert Ahdoot, SBN 172098
rahdoot@ahdootwolfson.com

9

1016 Palm Avenue
West Hollywood, CA 90069

10

Tel: (310) 474-9111
Fax: (310) 474-8585

11

12

Greg F. Coleman*
greg@gregcolemanlaw.com

13

GREG COLEMAN LAW PC
First Tennessee Plaza

14

800 S. Gay Street, Suite 1100
Knoxville, TN 37929

15

Telephone: (865)247-0080
Facsimile: (865) 522-0049

16

17

Daniel K. Bryson*

18

Dan@wbmllp.com
J. Hunter Bryson*

19

Hunter@wbmllp.com
WHITFIELD BRYSON & MASON LLP

20

900 W. Morgan St.
Raleigh, NC 27603

21

Telephone: 919-600-5000

22

Facsimile: 919-600-5035

23

*  *pro hac vice* applications forthcoming

24

Attorneys for Plaintiffs,

25

RYAN HINDSMAN and
JAMES ANDREWS

26

27

28

CLASS ACTION COMPLAINT, CASE NO. 3:17-CV-5337