1  Robert Ahdoot, SBN 172098
   rahdoot@ahdootwolfson.com
2  AHDOOT & WOLFSON, PC
   10728 Lindbrook Drive
3  Los Angeles, California 90024
4  Tel: (310) 474-9111
   Fax: (310) 474-8585
5

6  Gregory F. Coleman*
   greg@gregcolemanlaw.com
7  GREG COLEMAN LAW PC
   First Tennessee Plaza
8  800 S. Gay Street, Suite 1100
   Knoxville, TN 37929
9  Telephone: (865) 247-0080
   Facsimile: (865) 522-0049
10

11 Daniel K. Bryson*
   Dan@wbmllp.com
12 J. Hunter Bryson*
   Hunter@wbmllp.com
13 WHITFIELD BRYSON & MASON LLP
14 900 W. Morgan St.
   Raleigh, NC 27603
15 Telephone: 919-600-5000
   Facsimile: 919-600-5035
16 * *pro hac vice*

17 *Attorneys for Plaintiffs*

18

19              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
20

21 RYAN HINDSMAN, JAMES ANDREWS, ROBIN
   PETERSON, DIANA MIRANDA, and VANESSA         Case No.  3:17-cv-5337-JSC
22 MARYANSKI on behalf of themselves and all
   others similarly situated,
23
                          Plaintiff,            **PLAINTIFFS' OPPOSITION TO GM'S**
                                                **MOTION TO DISMISS THE FIRST**
24        v.                                    **AMENDED COMPLAINT AND**
                                                **MEMORANDUM OF POINTS AND**
25 GENERAL MOTORS LLC, a Delaware limited       **AUTHORITIES**
   liability company,                           Date: March 8, 2018
26                                              Time: 9:00 a.m.
                          Defendant.            Courtroom F
27                                               Hon. Jacqueline Scott Corley
28

# TABLE OF CONTENTS

Table of Contents........................................................................................................i

Table of Authorities.................................................................................................iii

Summary of Argument ........................................................................................... 1

Facts ........................................................................................................................ 1

Legal Standard ....................................................................................................... 3

Argument ................................................................................................................ 3

    I.    PLAINTIFFS SUFFICIENTLY ALLEGE THEIR EXPRESS WARRANTY CLAIMS ................................................................................................. 3

        A.  The Defect Is Covered by GM's Limited Warranty. .................................... 3

        B.  Each Plaintiff Sought Correction of the Defect, Which GM's Authorized Dealers Refused to Provide.................................................................... 6

        C.  GM's "Special Coverage Adjustments" Constitute Enforceable Warranties or Warranty Extensions. ..................................................... 7

    II.    PLAINTIFFS SUFFICIENTLY ALLEGE THEIR CLRA AND UCL CLAIMS ................................................................................................. 9

        A.  GM Has a Duty to Disclose the Defect......................................................... 9

           1.  The Defect Creates a Significant Safety Hazard .................................... 9

           2.  The Oil Life Monitoring System and Oil Pressure Warning Light in Class Vehicles Fail to Reliably Indicate When Oil Is Low................................................................................................ 11

           3.  Plaintiffs Sufficiently Allege GM's Pre-Sale Knowledge of the Defect................................................................................................ 11

        B.  Plaintiffs Sufficiently Allege Reliance and Causation. ............................. 13

        C.  Plaintiffs Sufficiently Allege GM's Concealment of the Existence of the Defect............................................................................................. 15

    III.    PLAINTIFFS SUFFICIENTLY ALLEGE THEIR IMPLIED WARRANTY CLAIMS ................................................................................... 16

        A.  Plaintiffs Hindsman and Peterson Need Not Allege a Manifestation of the Defect within the One-Year Warranty Period. ................................ 16

        B.  The Implied Warranty Claims Are Not Time-Barred................................ 18

    IV.    PLAINTIFFS SUFFICIENTLY ALLEGE THEIR LIMITED NATIONWIDE CLAIMS ......................................................................... 19

  A.   Plaintiffs Sufficiently Allege Individual Standing to Pursue Their
    Nationwide Claims. ...................................................................... 19

  B.   The Court May Properly Exercise Personal Jurisdiction. ........................... 20

Conclusion ................................................................................................ 22

Certificate of Service ................................................................................ 23

**Cases**

*Allen v. Similasan Corp.*, 96 F. Supp. 3d 1063 (S.D. Cal. 2015) ....................................20

*American Pipe Const. Co. v. Utah*, 414 U.S. 538 (1974)..........................................21 n.10

*American Suzuki Motor Co., v. Superior Court*, 37 Cal. App. 4th 1291 (1995) ..............18

*Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306 (C.D. Cal. 2013) .....11, 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...................................................................................3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)..................................................................3

*Barakezyan v. BMW of N. Am., LLC*, No. CV 16-00173 SJO (GJSx),
2016 U.S. Dist. LEXIS 68839 (C.D. Cal. Apr. 7, 2016) ........................................................4

*Bates v. United Parcel Serv., Inc.*, 511 F.3d 974 (9th Cir. 2007) (*en banc*) ....................22

*Branch v. Gov't Emples. Ins. Co.*, Case No. 3:16-cv-1010,
2018 U.S. Dist. LEXIS 4790 (E.D. Va. Jan. 10, 2018) ........................................................24

*Bristol-Myers Squibb Co. v. Superior Court,* 137 S. Ct. 1773 (2017)......................*passim*

*Butler v. Porsche Cars N.A., Inc.*, No. 16-CV-02042-LHK,
2016 U.S. Dist LEXIS 114239 (N.D. Cal. Aug. 25, 2016) ...............................................11

*Bryde v. GM, LLC*, No. 16-cv-02421-WHO, 2016 U.S. Dist. LEXIS 159707
(N.D. Cal. Nov. 17, 2016)...............................................................................................14 n.7

*Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220 (C.D. Cal. 2011)...........11

*Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, No. 16-CV-02941-LHK,
2016 U.S. Dist. LEXIS 123455 (Sep. 12, 2016) ................................................................11

*Daniel v. Ford Motor Co.*, 806 F.3d 1217 (9th Cir. 2015) ........................................*passim*

*Davidson v. Apple, Inc.*, No. 16-CV-04942-LHK,
2017 U.S. Dist. LEXIS 36524 (N.D. Cal. Mar. 14, 2017)...................................15, 15 n.8

*Day v. Air Methods Corp.*, Civil Action No. 5: 17-183-DCR,
2017 U.S. Dist. LEXIS 174693 (E.D. Ky. Oct. 23, 2017)................................................24

*Doyle v. Chrysler Grp. LLC*, No. SACV 13-00620 JVS (ANx),
2014 U.S. Dist. LEXIS 93157 (C.D. Cal. July 3, 2014) ...................................................15

*Falco v. Nissan N. Am., Inc.*, No. CV 13-00686 DDP (MANx),
2016 U.S. Dist. LEXIS 46115 (C.D. Cal. Apr. 5, 2016) ...................................................15

*Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007) ..............................15

*Feller v. Transamerica Life Ins. Co.*, No. 2:16-cv-01378-CAS-AJW,
2017 U.S. Dist. LEXIS 206822 (C.D. Cal. Dec. 11, 2017)...............................................23

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp.*, No. 17-cv-00564 NC,
2017 U.S. Dist. LEXIS 155654 (N.D. Cal. Sep. 22, 2017) ..............................................23

*Gauthier v. AMF, Inc.*, 788 F.2d 634 (9th Cir. 1986)...................................................12 n.6

*Gerstle v. Am. Honda Motor Co.*, No. 16-cv-04384-JST,
2017 U.S. Dist. LEXIS 100580 (N.D. Cal. June 28, 2017).............................................20

*Gray v. Toyota Motor Sales, U.S.A.*, No. CV 08-1690 PSG (JCx),
2012 U.S. Dist. LEXIS 15992 (C.D. Cal. Jan. 23, 2012) ................................................17

*Herremans v. BMW of North America, LLC*, No. CV 14-02363 MMM,
2014 U.S. Dist. LEXIS 145957 (C.D. Cal. Oct. 3, 2014).........................................*passim*

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 09-2047,
2017 U.S. Dist. LEXIS 197612 (E.D. La. Nov. 28, 2017) .......................................... 23-24

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 09-2047,
2018 U.S. Dist. LEXIS 805 (E.D. La. Jan. 2, 2018)........................................................24

*In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC,
2016 U.S. Dist. LEXIS 179487 (N.D. Cal. Sep. 14, 2016) ................................................4

*In re Seagate Tech. LLC Litig.*, No. 16-cv-00523-JCS,
2017 U.S. Dist. LEXIS 137270 (N.D. Cal. Aug. 25, 2017) .............................................19

*Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992 (N.D. Cal. 2009)..........................15 n.8

*Mendoza v. Hyundai Motor Co.*, No. 15-cv-01685-BLF,
2017 U.S. Dist. LEXIS 9129 (N.D. Cal. Jan. 23, 2017) ...................................................9

*Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297 (2009) .......................................19

*Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987 (N.D. Cal. 2013)............... 11, 14-15

*Neal v. State Farm Ins. Cos.,* 10 Cal. Rptr. 781 (Ct. App. 1961) ................................5 n.1

*Parenteau v. GM, LLC*, No. CV 14-04961-RGK (MANx),
2015 U.S. Dist. LEXIS 31184 (C.D. Cal. Mar. 5, 2015)........................................*passim*

*Peacock v. The 21st Amendment Brewery Cafe, LLC*, No. 17-cv-01918-JST,
2018 U.S. Dist. LEXIS 7537 (N.D. Cal. Jan. 17, 2018) ..................................................21

*Philips v. Ford Motor Co*., No. 14-CV-02989-LHK,
2016 U.S. Dist. LEXIS 58954 (N.D. Cal. May 3, 2016) ............................. 19-20

*Price v. Kawasaki Motors Corp., USA*, 10-01074-JVS,
2011 U.S. Dist. LEXIS 157631 (C.D. Cal. Jan. 24, 2011) ................................11

*Reniger v. Hyundai Motor Am*., 122 F. Supp. 3d 888 (N.D. Cal. 2015) ..........................14

*Rodriguez v. JLG Indus*., No. CV 11-04586 MMM (SHx),
2012 U.S. Dist. LEXIS 196186 (C.D. Cal. Aug. 3, 2012)................................12

*Sloan v. General Motors LLC,* Case No. 16-cv-07244-EMC (N.D. Cal. Feb. 7, 2018)......3

*Sloan v. GM, LLC*, No. 16-cv-07244-EMC,
2017 U.S. Dist. LEXIS 120851(N.D. Cal. Aug. 1, 2017) ................................12

*Soo Park v. Thompson*, 851 F.3d 910 (9th Cir. 2017) ....................................3

*Stearns v. Ticketmaster Corp.,* 655 F.3d 1013 (9th Cir. 2011)........................22

*Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017) ........................10

*Wilson v. Hewlett-Packard Co.,* 668 F.3d 1136 (9th Cir. 2012) ......................13

**Statutes**

15 U.S.C. § 2301.........................................................................9

Cal. Com. Code § 2725................................................................20

**Rules**

Fed. R. Civ. P. 8.........................................................................3

Fed. R. Civ. P. 9.........................................................................3

Fed. R. Civ. P. 12 .......................................................................3

**SUMMARY OF ARGUMENT**

Defendant General Motors LLC ("GM") seeks dismissal under Rule 12 based upon on a reading of the First Amended Complaint ("FAC") that is difficult to reconcile with the detailed and specific factual allegations it contains.

**FACTS**

GM designed, manufactured, distributed, marketed, sold, and leased Model Year 2010 – 2017 Chevrolet Equinox vehicles with 2.4-liter engines ("Class Vehicles") to Plaintiffs and Class Members. FAC ¶ 1, ECF No. 34. However, before 2010, GM knew that the Class Vehicles contained one or more design, materials, and/or manufacturing defects in the Class Vehicles' engines that cause them to improperly utilize the engine oil and, in fact, disproportionately burn off and/or consume abnormally high amounts of oil ("the Defect"). *Id.* at ¶ 3. The Defect is principally caused by defective piston rings. *Id.* at ¶¶ 4, 74-75, 79, 80, 116, 123, 127. The Defect, acknowledged by GM, relates to a material used in coating piston rings. Plaintiffs' Request for Judicial Notice in Opposition of Motion to Dismiss First Amended Complaint ("Plaintiffs' RJN ") Ex. A, at 7 (August 2013 GM TechLink, Vol. 15, No. 8). Additional contributing causes are short piston skirts, oil jets, or a faulty PVC system. FAC ¶¶ 5, 6, 74, 85, 88-90, 123. The Defect is widespread among Class Vehicle owners. *Id.* at ¶¶ 123-24. Exacerbating the host of engine damage problems and safety risks caused by excessive oil loss is GM's use of a defective oil pressure warning system. In each Class Vehicle, the oil pressure warning system fails to advise drivers of insufficient oil in their vehicles and gives no notice of the low oil levels. Consumers only learn of the problems when the vehicles stall or experience complete engine failures. *Id.* at ¶¶ 7-9; Plaintiffs' RJN Ex. B, at 3 (July 2012 GM TechLink, Vol. 14, No.7, "Excessive Oil Consumption").

Plaintiffs individually allege their Class Vehicles suffered from the Defect, FAC ¶¶ 22-23, 25, 27, 34-35, 46, 48-49, 55, 61, along with the attendant consequences. *Id.* at ¶¶ 12, 14, 23, 30, 37, 42, 49, 55-56, 61. In particular, each Plaintiff experienced "spark knocking" as a result of the Defect, which

they allege caused premature engine damage in their vehicles. *Id.* at ¶¶ 10, 24, 35, 39, 40, 48, 53, 60, 72, 82. 83, 97-98, 101, 105. Plaintiff Miranda's engine "was completely ruined and a complete engine replacement was required." *Id.* at ¶ 56. Plaintiff Andrews has stopped using his Class Vehicle for long trips out of fear that the engine will fail due to the Defect. *Id.* at ¶ 42.

More importantly, the Defect poses a significant safety hazard. Plaintiff Miranda's engine shut off completely while she was driving. *Id.* at ¶ 53. Plaintiff Maryanski's engine shut down on its own, without warning, at a stop light. *Id.* at ¶ 62. Other reports of engine shutdowns are not uncommon. *Id.* at ¶ 123. The Defect constitutes a serious safety issue for operators of Class Vehicles. *Id.* at ¶¶ 10, 11, 72, 95, 105, 123, 124, 126, 203.

GM knew of the Defect before January 2010 but chose to conceal it from consumers. *Id.* at ¶¶ 3, 15, 16, 73, 116, 123, 128, 137, 175, 187, 191, 200, 212. GM represented that excessive oil consumption was completely normal. *Id.* at ¶¶ 128, 137, 191; *see also* Plaintiffs' RJN Ex. C (August 2014 Special Coverage Adjustment ("SCA")). In describing this fantasy as reality GM attempted to do three things:

- To slash the percentage of its engines that could be deemed defective, in order to significantly reduce or eliminate its financial exposure for expensive engine repairs;

- To attempt to blame the consumers if serious engine damage occurred by claiming they failed to keep a sufficient level of oil in the engine; and

- To provide a rationale for imposing a burdensome and, for most consumers, impossibly high hurdle to obtain warranty coverage.

As will be discussed more fully below, these allegations sufficiently state claims for breach of express and implied warranty, as well as for violation of the federal Magnusson-Moss Act, California's Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and Song-Berverly Act claims stated therein. Accordingly, Plaintiffs respectfully ask that this Court deny GM's Motion in its entirety.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires that a plaintiff provide only "a short and plain statement of the claim showing that the pleader is entitled to relief," such that the defendant receives "fair notice" of the claims against it. To survive a motion to dismiss under Rule 12, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (discussing Fed. R. Civ. P. 12). The court must "accept the plaintiff's allegations as true and view them in the light most favorable to her." *Soo Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). Allegations of fraud must be pled "with particularity," but allegations of a defendant's knowledge or intent may be made "generally." Fed. R. Civ. P. 9(b); *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009). Within the context of Rule 9, a party is excused "from pleading [] intent under an elevated pleading standard" but must still include a "short and plain statement of the claim," as required under Rule 8. *Iqbal*, 556 U.S. at 687.

**ARGUMENT**

Plaintiffs refer the Court to the Honorable Judge Edward Chen's decision in *Sloan v. General Motors LLC,* Case No. 16-cv-07244-EMC (N.D. Cal. Feb. 7, 2018) (Plaintiffs' RJN Ex. 6). This decision deals with the precise issues before this Court on the same oil consumption defect but involving a different GM engine.

## I.   PLAINTIFFS SUFFICIENTLY ALLEGE THEIR EXPRESS WARRANTY CLAIMS.

### A.   The Defect Is Covered by GM's Limited Warranty.

A breach of express warranty claim is sufficient where a manufacturing defect is alleged, and the warranty covers "materials or workmanship." *See Barakezyan v. BMW of N. Am., LLC*, No. CV 16-00173 SJO (GJSx), 2016 U.S. Dist. LEXIS 68839, at *20-21 (C.D. Cal. Apr. 7, 2016) (dismissing claim because "Plaintiff failed to adequately allege a materials or workmanship defect."). Equating manufacturing defects with all non-design product defects, the Court noted that California recognized two categories of product defects: manufacturing defects and design defects. *Id.*; *see also In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2016 U.S. Dist. LEXIS 179487, at *74 (N.D. Cal. Sep. 14, 2016) (same).

> [G]iven the above distinction drawn by the California Court of Appeal, Plaintiffs' allegations may well pertain to a design, rather than a manufacturing, defect. However, Defendant's September 2013 Tech Link article expressly contemplated that repairing the defect, *including conducting the oil consumption test and replacing pistons and related components, may be covered "under warranty"* (*see* FAC, Ex. 1 at 5), and Defendant does not assert that this article referred to a warranty other than the one at issue. This indicates that Defendant itself viewed the defect as a manufacturing defect. In light of this, the Court finds that Plaintiffs' allegations are sufficient at the pleading stage.

*Parenteau v. GM, LLC*, No. CV 14-04961-RGK (MANx), 2015 U.S. Dist. LEXIS 31184, at *25-26 (C.D. Cal. Mar. 5, 2015) (emphasis added).

GM's argument focuses exclusively on the text of the "Repairs Covered" subsection of the broader "What is Covered" heading for its argument that the Defect is not covered under its express warranties. Notice of Motion and Motion to Dismiss First Amended Complaint; Memorandum of Points and Authorities ("Memo") 10-11, ECF No. 35. Even if this Court accepts GM's argument that this language does not cover "design defects"—a proposition with which Plaintiffs' disagree—there are three additional flaws with GM's contention. First, this paragraph is not the only one detailing warranty coverage—it is *not* exclusive. Under the same master heading, "What is Covered," are other coverage sections, including "Powertrain Component Warranty Coverage" and "Engine Coverage." These coverages state "[t]he powertrain is covered for 5 years or 100,000 miles, whichever comes first," and "Engine Coverage includes: All internally lubricated parts, engine oil cooling hoses, lines and radiators."[1]

Second, the defect *does* relate to a "materials" defect, which GM concedes is covered by the "Repairs Covered" language it relies upon. *See* August 2013 GM TechLink article at 7 ("**Piston Ring Coating.** The top compression ring in the new kit has a more robust coating on it that is designed not to

---

[1] At worst, there is an ambiguity as to what is covered under the warranty language, such that GM's Limited Warranty "must be resolved against the draftsman[.]" *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1220 (9th Cir. 2015) (citing *Neal v. State Farm Ins. Cos.,* 10 Cal. Rptr. 781, 783 (Ct. App. 1961)).

wear as quickly as the original coating. Tests indicate that it wears about 4–5 times longer than the original coating.").

Third, GM has admitted in its Technical Service Bulletins ("TSB") that excessive oil consumption resulting from defective piston rings or pistons is covered by its warranties. Specifically, in one issued on or before September 10, 2013 (TSB # 13-06-01-003D), GM "updated" warranty information, and provided a table of permitted labor time for "[v]ehicles repaired under warranty." Plaintiffs' RJN Ex. D, at 1, 5.[2]

On these same facts (indeed, for this very same engine), a court in rejected the same argument made by GM in that case:

> Defendant's September 2013 Tech Link article expressly contemplated that repairing the defect, including conducting the oil consumption test and replacing pistons and related components, may be covered "under warranty" (see FAC, Ex. 1 at 5), and Defendant does not assert that this article referred to a warranty other than the one at issue. This indicates that Defendant itself viewed the defect as a manufacturing defect. In light of this, the Court finds that Plaintiffs' allegations are sufficient at the pleading stage.

*Parenteau*, 2015 U.S. Dist. LEXIS 31184, at *25-26. There is no reason to reach a different result in this litigation.

Moreover, Plaintiffs have *not* limited their definition of the Defect to *only* a design flaw.

- "Prior to 2010, GM knew that the Class Vehicles contained *one or more design and/or manufacturing defects*, including, but not limited to, defects contained in the Class Vehicles' engines that cause them to be unable to properly utilize the engine oil and, in fact, to improperly burn off and/or consume abnormally high amounts of oil (the 'Defect.')." FAC ¶ 3 (emphasis added).

- "The Class Vehicles contain one or more *design and/or manufacturing defect*, including, but not limited to, the Defect, as described herein." *Id*. at ¶ 71 (emphasis added).

---

[2] GM attached as Ex. I to its Request for Judicial Notice an August 2014 SCA for MY2010 vehicles that similarly indicates that the oil consumption defect repair is subject to coverage under GM's warranty. *See* ECF No. 36-9, at 3 ("If a reimbursement request is approved, the dealer should immediately issue a check to the customer and submit an appropriate warranty transaction for the incurred expense."); *see also* FAC Ex. 4 (MY2011 SCA), at 3, ECF No. 34-4 ("**Note:** This special policy covers repairs after the original powertrain warranty has expired. For vehicles still covered under the original powertrain warranty, the labor code operations should be used from bulletin 13-06-01-003.").

- "Throughout the Class Period, GM has been aware that the 2.4L engines it *designed, manufactured, and installed* in the Class Vehicles contained the Defect, resulting in excessive oil loss and engine damage." *Id*. at ¶ 140 (emphasis added).

- "These common legal and factual issues include the following . . . whether the Class Vehicles and their engines are *defectively designed or manufactured* such that they are not suitable for their intended use." *Id*. at ¶ 152(a) (emphasis added).

- "GM knew that the Class Vehicles and their engines suffered from an inherent defect that caused them to consume unusually high amounts of oil, were *defectively designed or manufactured*, and were not suitable for their intended use. *Id*. at ¶ 187 (emphasis added).

- "[T]he Class Vehicles are defective, including but not limited to the *defective design and/or manufacture* of their engines that suffer from the Oil Consumption Defect alleged herein." *Id*. at ¶ 205 (emphasis added).

Because Plaintiffs have alleged that the Defect consists of one or a combination of design, materials, and manufacturing defects, under *Parenteau* and the other authorities cited above, Plaintiffs have properly alleged that the Defect is covered under GM's express warranty.

### B.   Each Plaintiff Sought Correction of the Defect, Which GM's Authorized Dealers Refused to Provide.

GM argues that none of the named Plaintiffs submitted their vehicles for repair during the five-year warranty period, prohibiting relief under the warranty. Memo 12-13. Plaintiffs have, in fact, alleged just the opposite.

- **Hindsman** – First took his Class Vehicle to dealer in May 2010 when it only had 5,000 miles on it and was told that the oil level was "bone dry." FAC ¶ 22. On another visit in February 2011, he told the service technician that his Class Vehicle was over-consuming oil between routine oil changes and was told it would consume less oil if he used synthetic oil rather than conventional oil. *Id*. at ¶ 23. Hindsman was not informed until March 2014 that the problem he was experiencing "may" be caused by an engine defect, but only if his Class Vehicle consumed oil at a rate greater than one quart every two thousand miles. *Id*. at ¶¶ 25-26.[3]

- **Andrews** – In late February after experiencing loud knocking coming from the engine, a local mechanic in Banning, California come to his home and check the oil level in the vehicle. *Id*. at¶

---

[3] GM now also argues Mr. Hindsman's claim fails because he "does not allege that he requested repairs until the spring of 2015, after his five-year warranty had expired. Repairs after warranty expiration are not covered." Memo 12. But GM sent Plaintiff Hindsman correspondence in March 2014 that stated if the Defect manifested "within 7 years and 6 months of the date your vehicle was originally placed in service or 120,000 miles, whichever occurs first, the [Defect] will be repaired for you at no charge." FAC ¶ 25; *see also* FAC Ex. 1 (a similar correspondence sent to Plaintiff Andrews).

6

35. Plaintiff's mechanic found that over three-quarters of his vehicle's oil had already been consumed despite driving only about 1,000 miles since he purchased the vehicle. *Id*. On April 14, 2017, Plaintiff had a regular oil change where his mechanic noted the vehicle had consumed an excessive amount of engine oil. *Id*. at ¶ 38. Plaintiff Andrews contacted GM directly about what could be done to fix his vehicle's high oil consumption, and within days received a notice that GM would extend his warranty. *Id*.

- **Peterson** – On or around August 2013, Plaintiff took her vehicle in for a routine oil change and was told her vehicle was "burning oil." *Id*. at ¶ 46. In January 2016, Plaintiff took her vehicle in for another routine oil change was told her vehicle was not "burning oil," but instead the oil level was low because she uses her vehicle more than the average driver., *Id*. at ¶ 47.

- **Miranda** – In January 2015 Plaintiff purchased a used 2012 Class Vehicle. *Id*. at ¶ 51. On October 5, 2017, Plaintiff was driving her Class Vehicle to work, when her engine completely shut off while she was driving on the road. *Id*. at ¶ 53. About a week later, Plaintiff had her Class Vehicle towed to a dealer where was told by service technicians that the engine was completely ruined and a complete engine replacement was required. *Id*. at ¶ 56. Plaintiff neither had an Oil Level Low indicator nor Oil Pressure Low indicator ever illuminate in her Class Vehicle to notify her that her vehicle was completely dry before the engine shut down. *Id*. at ¶ 54.

- **Maryanski** – In February 25, 2012, Plaintiff purchased a Certified Preowned Class Vehicle with approximately 5,000 miles showing on the odometer. *Id*. at ¶ 58. On or about April 2015, Plaintiff Maryanski became concerned that her Class Vehicle was overconsuming oil when she heard a knocking noise. *Id*. at ¶ 60. In the Sumer of 2016, while stopped at a stop light, Plaintiff's Class Vehicle completely shut off. *Id*. at ¶ 62. In July of 2017, Plaintiff took her Class Vehicle be fixed pursuant to the SCA. *Id.* at ¶ 63. To date, Plaintiff's Class Vehicle remains at Three Way Chevrolet unrepaired and damaged by the Defect. *Id*. at ¶¶ 63, 64.

Taken as true, these allegations demonstrate that each of the named Plaintiffs presented their vehicles within a reasonable time for repairs during the five-year warranty period.

With regard to Defendant's second contention [that Plaintiffs failed to allege they actually requested GM dealers to perform repairs], Plaintiffs allege that they took their vehicles to GM dealers and complained that the vehicles were consuming excessive amounts of oil. Defendant provides no support for its assertion that to invoke its obligation to repair to the alleged defect, Plaintiffs were required to know precisely which repairs needed to be made, and to communicate that information to the dealer.

*Parenteau*, 2015 U.S. Dist. LEXIS 31184, at *23 (refusing to dismiss express warranty claims).

### C. GM's "Special Coverage Adjustments" Constitute Enforceable Warranties or Warranty Extensions.

GM contends that its SCAs are not warranties. Memo 14. However, common sense suggests that the language of the SCA issued in July 2015 constitutes a warranty (or warranty extension):

**What We Have Done:** General Motors is providing owners with additional protection for the condition described above. If this condition occurs on your [20__] model year Chevrolet Equinox or GMC Terrain within 7 years and 6 months of the date your vehicle was originally placed in service or 120,000 miles (193,000 km), whichever occurs first. The condition will be repaired for you at no charge.

FAC Ex. 4, at 6; *see also* GM RJN Exs. I-K. Indeed, in the SCA for MY2012 vehicles, GM states:

The conditional right to reimbursement is provided by GM solely in the interest of customer satisfaction and is personal to Customers. *Customers may not assign and GM does not consent to any assignment of any Customer's right to submit reimbursement claims, or to receive reimbursement, or any other rights granted by this Special Coverage to any third party, including but not limited to service contract providers, and this Special Coverage is not intended to and does not confer any third party beneficiary, subrogation or contribution rights, or any other rights to reimbursement, against GM, whether in law, equity or otherwise, on any third parties.*

ECF No. 36-11, at 1 (emphasis in original). One way Magnusson-Moss defines a written warranty is "any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking[.]" 15 U.S.C. § 2301(6)(B). Settlement terms in vehicles defect cases frequently include warranty extensions using language such as that contained in the SCAs. *E.g., Mendoza v. Hyundai Motor Co.*, No. 15-cv-01685-BLF, 2017 U.S. Dist. LEXIS 9129, at *8-9 (N.D. Cal. Jan. 23, 2017) ("Hyundai will extend its Powertrain Warranty to cover short block engines for a 10-year/120,000-mile period, whichever comes first."). There can be no real doubt that the SCAs are either new warranties or warranty extensions.

Plaintiffs Hindsman, Andrews, and Maryanski specifically asked for and were refused repairs to the Defect under the terms of the SCA. FAC ¶¶ 27, 38-40, 63. Plaintiffs have thus alleged their express warranty claims related to the SCA issued by GM. Accordingly, the Plaintiffs have sufficiently stated an express warranty claim under the UCC and the Magnuson-Moss Warranty Act. *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1227 (9th Cir. 2015) ("Claims under the Magnuson-Moss Warranty Act 'stand or fall with . . . express and implied warranty claims under state law.'") (citation omitted).

8

## II. PLAINTIFFS SUFFICIENTLY ALLEGED THEIR CLRA AND UCL CLAIMS.

### A. GM Has a Duty to Disclose the Defect.

#### 1. The Defect Creates a Significant Safety Hazard.

GM argues it owes no duty to Plaintiffs regarding the Defect because they have not alleged more than "merely 'conjectural and hypothetical' injuries," citing *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1028 (9th Cir. 2017). Memo 15.[4] The danger here is anything but conjectural—two named Plaintiffs, as well as numerous other consumers, have experienced their Class Vehicles' engines shutting down completely while they were being operated on the road. FAC ¶¶ 53, 62, 123, 124. And even the *Williams* opinion recognizes that for those who have not yet experienced an engine failure during operation, "[w]here a plaintiff alleges a sufficiently close nexus between the claimed defect and the alleged safety issue, the injury risk need not have come to fruition." *Williams*, 851 F.3d at 1028 (citations omitted).[5]

A practically identical case to the one before the Court (also dealing with an oil consumption defect) clearly articulates why the Defect here constitutes a safety issue creating GM's duty to disclose:

> Under California law, and as recently described by the Ninth Circuit, a manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or *a safety issue*. The court need not determine whether defendants' warranty obligations required them to take steps to correct the purported Defect because it concludes that plaintiffs have adequately alleged that the information purportedly concealed by defendants pertained to a safety issue.

> Plaintiffs allege that the engine's inability to utilize oil properly *can cause engine failure to occur at any time, under any driving condition, and at any speed, creating a serious risk of injury.* They allege that defendants concealed the defect from consumers by failing to disclose its existence, by denying that the defect was a known problem, and by asserting that the vehicles consumption of high amounts of oil was normal when they received a complaint. Plaintiffs thus

---

[4] *Williams* is facially distinguishable because there "the SAC lack[ed] any allegations indicating that *any customer, much less any plaintiff, experienced such a fire—a notable omission* if the alleged unreasonable safety hazard arises in all Yamaha outboard motors sooner or later." *Id*. at 1028-29 (emphasis added).

[5] GM itself warns in the Class Vehicles' Owner's Manual that low engine oil creates a safety hazard: "Do not keep driving if the oil pressure is low. The engine can become so hot that it catches fire. Someone could be burned." FAC ¶¶ 102-104.

allege that defendants concealed facts relating to an unreasonable safety risk that would have been material to the reasonable consumer. Because plaintiffs have adequately alleged a safety defect, they have sufficiently pled a material breach of the duty to disclose for purposes of the UCL and CLRA. The court therefore denies defendants' motion to dismiss the claims on this basis.

*Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1329-31 (C.D. Cal. 2013) (internal citations and punctuation marks omitted) (emphasis added); *see also Price v. Kawasaki Motors Corp., USA*, 10-01074-JVS, 2011 U.S. Dist. LEXIS 157631, at *6 (C.D. Cal. Jan. 24, 2011) (same excessive oil consumption in vehicle presents safety defect); *Parenteau*, 2015 U.S. Dist. LEXIS 31184, at *11-12 (same citing, *inter alia*, *Asghari* and *Price*).

GM argues that "Plaintiffs do not allege that they, or anyone else, has ever had an accident or been injured as a result of the alleged defect." Memo 15. While it may be true that GM does not consider the Defect to be a hazard unless a consumer is injured or dies, the law requires no such catastrophe. "[T]he fact that Plaintiff and the individuals posting on Amazon.com did not themselves suffer physical injury 'does not alter the conclusion that the [complaint] plausibly alleges that the alleged defect could pose a safety hazard, which is all that is necessary to survive a motion to dismiss." *Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, No. 16-CV-02941-LHK, 2016 U.S. Dist. LEXIS 123455, at *36 (Sep. 12, 2016) (citing *Butler v. Porsche Cars N.A., Inc.*, No. 16-CV-02042-LHK, 2016 U.S. Dist LEXIS 114239, at *4 (N.D. Cal. Aug. 25, 2016)); *see also Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 997-98 (N.D. Cal. 2013) (determining that the plaintiff plausibly alleged a safety hazard because of the inherent risks of physical injury resulting from the defect); *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1236 (C.D. Cal. 2011) (finding that the plaintiff sufficiently alleged a safety hazard based on defects that could result in sudden engine failure while the car was in motion even though the complaint lacked any allegation that the plaintiff or any class member had ever experienced sudden engine failure while driving). Here, although no Plaintiff has died or been physically injured as of yet, the Defect nevertheless creates the potential for engine failure, and thus a risk of personal injury or death. Accordingly, Plaintiffs have properly alleged that the Defect poses a safety risk.

**2.    The Oil Life Monitoring System and Oil Pressure Warning Light in Class Vehicles Fail to Reliably Indicate When Oil Is Low.**

GM asserts that warning indicators exist to notify a driver that his Class Vehicle is low on oil, which, relying on *Sloan v. GM, LLC*, No. 16-cv-07244-EMC, 2017 U.S. Dist. LEXIS 120851, at *21 (N.D. Cal. Aug. 1, 2017), negates any safety risk. Memo 16-17. This aspect of *Sloan* is distinguishable from the present case because the plaintiffs there *admitted* that drivers would receive a low oil warning. "[T]here is a separate oil pressure indicator that warns drivers of low oil levels, a fact that both GM and CA Plaintiffs agreed to during oral argument. Because drivers will thus admittedly have warning before any engine damage, there is no risk of sudden or surprising failure, which might give rise to a serious safety concern." *Id*. at *20. The same is true for the other authorities cited by GM, none of which deal with a warning device that is comparably unreliable and undependable as the Oil Life Monitory System and oil pressure indicator in Class Vehicles.[6] In contrast, Plaintiffs' allege that the Oil Life Monitoring System and the oil pressure warning light (a red canister) *fail* to reliably indicate when engine oil is low. FAC ¶¶ 7, 9, 10, 29, 33, 45, 46, 54, 59, 91-96, 108, 203. Therefore, the presence of the oil warning indicators does nothing to mitigate the safety risk created by the Defect.

**3.    Plaintiffs Sufficiently Allege GM's Pre-Sale Knowledge of the Defect.**

GM argues that generic allegations of warranty service and dealership complaints are not sufficient to allege pre-sale knowledge of the Defect. Memo 18 (citing *Wilson v. Hewlett-Packard Co.,* 668 F.3d 1136 (9th Cir. 2012) and *Herremans v. BMW of North America, LLC*, No. CV 14-02363

---

[6] *Gauthier v. AMF, Inc*., 788 F.2d 634, 635-36 (9th Cir. 1986), concerned a written warning. *Rodriguez v. JLG Indus*., No. CV 11-04586 MMM (SHx), 2012 U.S. Dist. LEXIS 196186, at *50-57 (C.D. Cal. Aug. 3, 2012), dealt with the sufficiency of a written warning.

MMM, 2014 U.S. Dist. LEXIS 145957 (C.D. Cal. Oct. 3, 2014)). However, Plaintiffs have alleged GM was on notice of the Defect at least by 2007, FAC ¶ 110, before Plaintiffs Hindsman (January 2010), Andrews (January 2017), Peterson (December 2012), Miranda (January 2015), and Maryanski (November 2012) purchased their Class Vehicles. Plaintiffs also allege that GM directed consumers to take their Class Vehicles to GM authorized dealerships for routine maintenance, including oil changes. *See* FAC Ex. 4, at 6. GM's own publications, including the TechLink articles and its TSBs, provide sufficient facts to infer that GM knew about the Defect. *See* Plaintiffs' RJN Exs. A & D. Plaintiffs also allege that there were numerous other sources of information available to GM dating back to well before Plaintiffs purchased their Class Vehicles. *Id*. at ¶¶ 109-26. By alleging the wealth of knowledge to which GM was directly aware, Plaintiffs have sufficiently alleged that GM either knew, or should have known, of the existence of the Defect.

*Parenteau* dealt with arguments almost identical to those GM raises here:

Defendant cites to *Wilson* for the proposition that Plaintiffs' allegations of knowledge are conclusory and insufficient. In *Wilson*, the court held the allegation that the manufacturer "had 'access to the aggregate information and data regarding the risk of overheating'" was "speculative and [did] not suggest how any tests or information could have alerted [the manufacturer] to the defect." 668 F.3d at 1147. However, in *Falco v. Nissan North America*, a court in the Central District distinguished *Wilson* where the plaintiff's allegations of knowledge due to internal testing and reporting, which were nearly identical to the instant allegations, were accompanied by allegations that the manufacturer issued Technical Service Bulletins regarding the defect at issue to dealerships approximately one-and-a-half to two-and-a-half years after the plaintiffs purchased their vehicles. 13-00686-DDP, 2013 U.S. Dist. LEXIS 147060, 2013 WL 5575065, at *6 (C.D. Cal. Oct. 10, 2013). The court found that the additional allegations permitted the plausible inference that the manufacturer was aware of the defect at the time it sold the vehicles, and "acquired this knowledge through the sorts of internal data Plaintiffs allege." *Id*.

Similarly, here, the Court finds that the allegations regarding Defendant's Tech Link articles and customer satisfaction letters are sufficient to render Plaintiffs' allegations plausible rather than conclusory. Contrary to the allegations in *Wilson*, Plaintiffs' allegations show not only that testing and internal reporting could have alerted Defendant to the defect, but that they in fact did so. Moreover, the July 2012 article was published sufficiently close in time to the purchase of the vehicles so as to permit a reasonable inference that Defendant was aware of the defect at the time of purchase. *See also Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 998 (N.D. Cal. 2013) (finding similar allegations of internal testing and reporting sufficient where coupled with allegation that manufacturer issued two technical service bulletins regarding the defect).

*Parenteau*, 2015 U.S. Dist. LEXIS 31184, at \*16-17; *accord, Reniger v. Hyundai Motor Am.*, 122 F. Supp. 3d 888, 900 (N.D. Cal. 2015) (citing cases including *Parenteau*). Plaintiffs' allegations here, and in the documents contained in Plaintiffs' request for judicial notice illustrating GM's knowledge prior to July 2013, are identical to those found sufficient in *Parenteau*.[7] Therefore, Plaintiffs have sufficiently alleged GM's knowledge of the Defect at the time Plaintiffs purchased their Class Vehicles.

### B. Plaintiffs Sufficiently Allege Reliance and Causation.

GM argues that no Plaintiff has sufficiently alleged reliance or causation because certain Plaintiffs had no pre-purchase contact with GM. Memo 19-20. Reliance and causation may be presumed where the allegations establish that the defendant's omissions were material. *E.g., Falco v. Nissan N. Am., Inc.*, No. CV 13-00686 DDP (MANx), 2016 U.S. Dist. LEXIS 46115, at \*21 (C.D. Cal. Apr. 5, 2016) ("Causation, and an inference of reliance, for the class in a CLRA claim can be shown as to an entire class by proving materiality.") (citation and internal quotation marks omitted); *Doyle v. Chrysler Grp. LLC*, No. SACV 13-00620 JVS (ANx), 2014 U.S. Dist. LEXIS 93157, at \*17 (C.D. Cal. July 3, 2014) ("[R]eliance is presumed under the CLRA and UCL if the omitted information is material.") (citations omitted). "Whether an omission is material is a fact-intensive question that asks whether a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *Falco*, 2016 U.S. Dist. LEXIS 46115, at \*21 (citation and internal quotation marks omitted). Here, Plaintiffs allege they would not have purchased their Class Vehicles had the Defect been disclosed. FAC ¶¶ 16, 178, 190. Nothing more is required. *E.g., Mui Ho*, 931 F. Supp. 2d at 999 ("[A]s to reliance, Plaintiffs allege that they would not have purchased the Class

---

[7] Like *Wilson*, *Herremanns*, which GM also cites, is also distinguishable because there were no supporting allegations of other indicators such as the TSBs and SCAs alleged here and discussed in *Parenteau*. "In *Ho* and *Falco*, the plaintiffs also alleged knowledge based on TSBs. In *Wilson*, *Grodzitsky*, and *Herremans*, plaintiffs did not plead any other significant information pre-dating their alleged defective purchases. Here, Plaintiffs have also alleged three TSBs. . . . [T]he allegations of three TSBs and GM's exclusive access to internal data, taken together, permit a reasonable inference that GM knew of the airbag defect at the time plaintiffs purchased their vehicles." *Bryde v. GM, LLC*, No. 16-cv-02421-WHO, 2016 U.S. Dist. LEXIS 159707, at \*31 (N.D. Cal. Nov. 17, 2016).

Vehicles had they known of the [defect]."); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007) (finding that reliance is "easily satisfied" where plaintiffs allege that a reasonable consumer would not have paid the asking price had the defect been disclosed). Reliance and causation may be presumed.

Both *Davidson v. Apple, Inc.*, No. 16-CV-04942-LHK, 2017 U.S. Dist. LEXIS 36524, at *30-31 (N.D. Cal. Mar. 14, 2017), and the fraudulent nondisclosure portion of *Parenteau*, 2015 U.S. Dist. LEXIS 31184, at *19, may be distinguished because they concern claims based upon omissions from written materials.[8] Unlike *Davidson* and the fraudulent nondisclosure portion of *Parenteau* as cited by GM, *Herremans* (which is factually more similar to the case at bar) is more instructive for this Court. There the court found that the plaintiffs had alleged the omissions with sufficient particularity:

> The court concludes that Herremans has pled her fraudulent omission/concealment claims with sufficient particularity under Rule 9(b). Herremans pleads "who" engaged in concealment (BMW); "what" was omitted and/or concealed (a water pump defect that causes the class vehicles' engines to overheat and creates a risk of catastrophic engine failure); "why" the information was not disclosed (to sell more class vehicles at a premium price and to avoid having to reimburse costs incurred by customers associated with identifying and fixing the defect); and "how" BMW allegedly concealed the information (by denying, following the receipt of numerous customer complaints, that there was a known mechanical water pump problem, and by assuring Herremans and class members that repairs were permanent, rather were temporary, fixes for the problem). Herremans has thus adequately pled the particulars of BMW's allegedly fraudulent omissions.

*Herremans*, 2014 U.S. Dist. LEXIS 145957, at *27 (citations omitted). Plaintiffs have alleged the same information that the *Herremans* Court found sufficient: "who" (GM), FAC ¶¶ 1, 3, 15, 16, 65-66; "what" (the Defect causes Class Vehicles' engines to consume oil excessively, thus creating premature engine

---

[8] The opinion in *Marolda v. Symantec Corporation*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009), upon which the fraud portion of the *Parenteau* opinion is based has been limited to cases with similar facts: "[S]ubsequent to *Marolda*, district courts within the Ninth Circuit have limited *Marolda's* reach. This is because *Marolda* involved an alleged fraudulent omission within a particular advertisement produced by the defendant. The plaintiff [in *Marolda*] claimed to know about the advertisement but failed to describe it to the court. Thus, although a [p]laintiff must satisfy Rule 9(b) in alleging a fraudulent omission, the *Marolda* requirements are not necessarily appropriate for all cases alleging a fraudulent omission." *Davidson*, 2017 U.S. Dist. LEXIS 36524, at *28. (citations and internal quotation marks omitted).

damage and the risk of catastrophic engine failure), *id.* at ¶¶ 3-12, 19, 74-108; "why" (because this is material information that a reasonable consumer would have wanted to know before deciding whether to purchase a Class Vehicle), *id.* at ¶ 14, 16, 132, 142, 177, 178, 190; "how" (by denying that the Defect was a known issue and claiming that the excessive oil consumption was normal), *id.* at ¶¶ 132, 212. Plaintiffs have alleged reliance and causation with sufficient particularity.[9]

### C. Plaintiffs Sufficiently Allege GM's Concealment of the Existence of the Defect.

Plaintiffs allege that "GM actively concealed and failed to disclose the Defect to Plaintiffs and Class Members at the time they purchase . . . their Class Vehicles and thereafter." FAC ¶ 15. GM asserts these "and similar allegations . . . are completely conclusory and do not include the 'specific substantiating facts' or 'affirmative acts of concealment' that Rule 9(b) requires to plead 'active concealment' of the alleged defect." Memo 30. Where there is an allegation of active concealment, a plaintiff must allege more than "mere nondisclosure," instead pleading particularized facts demonstrating that the defendants took steps to actively conceal a defect. *Gray v. Toyota Motor Sales, U.S.A.*, No. CV 08-1690 PSG (JCx), 2012 U.S. Dist. LEXIS 15992, at *26 (C.D. Cal. Jan. 23, 2012).

Plaintiffs make numerous allegations of GM's concealment of the Defect. FAC ¶¶ 15, 16, 117, 128, 138-141, 145, 152(c), 175, 176, 188, 189(c), 190, 192, 195, 212. As recounted in Section I.B., *infra*, Plaintiffs also allege facts showing that they reasonably attempted to discover the nature of the facts relating to the Defect. In particular, GM propagated the assertion that consumption of up to 1 quart of oil every 2,000 miles for these 2.4L four-cylinder engines was normal, or "not excessive." Plaintiffs' RJN Ex. D (Sept. 10, 2013, TSB). Particularly in light of GM's efforts to hide the problem in a cloak of normalcy, the FAC's allegations show that Plaintiffs acted diligently to discover the nature of the problem with their Class Vehicles. These allegations outline specific circumstances involving each of

---

[9] Additionally, Plaintiffs Hindsman, Peterson, and Maryanski purchased from authorized GM dealers, FAC ¶¶ 20, 44 & 58, such that they have adequately alleged that these dealers would have notified them of the Defect (or corrected it) before their purchases had GM complied with its disclosure obligations. *See Daniel*, 806 F.3d at 1226-27.

the named Plaintiffs in which they experienced the Defect, and in some cases, were put in danger while driving when the Defect caused their vehicle to shut off while in use.

GM never revealed the existence of the Defect before Plaintiffs' purchased their respective vehicles. Only after concluding the sale—in some cases years later—did GM warn Plaintiffs by sending notices and posting service bulletins with regard to the Defect and its effect on Class Vehicles. *Id.* at ¶¶ 26, 36. For example, in 2017, Plaintiff Andrews purchased a 2012 model Chevrolet Equinox. Neither prior to nor immediately following the sale did GM warn Plaintiff Andrews about the Defect that affected his Class Vehicle. *See id.* at ¶ 32. In 2015, Plaintiff Miranda purchased a 2012 model Chevrolet Equinox. Again, GM did not warn Plaintiff Miranda either before or immediately after she purchased the Class Vehicle. *See id.* at ¶ 51.

GM, however, had learned that the Defect affected Class Vehicles prior Plaintiffs' purchases through early testing data, early consumer complaints regarding the Defect, and dealer feedback. *Id.* at ¶ 73. The Defect eventually became so prevalent that no later than July 2012 GM published service information relating to the Defect, Plaintiffs' RJN Ex. B, and in August 2014 issued a SCA for the MY 2010 Class Vehicles. Plaintiffs' RJN Ex. C. Plaintiffs have thus sufficiently alleged GM's concealment of the Defect. *Asghari*, 42 F. Supp. 3d at 1327-28 (citing cases).

## III. PLAINTIFFS SUFFICIENTLY ALLEGE THEIR IMPLIED WARRANTY CLAIMS.

### A. Plaintiffs Hindsman and Peterson Need Not Allege a Manifestation of the Defect within the One-Year Warranty Period.

GM does not argue that Plaintiffs Hindsman and Peterson fall outside the scope of protection offered by the Song-Beverly Act, but instead argues that they fail to allege that their vehicles were not merchantable "within the implied warranty period." Memo 21-22. As GM argues, these vehicles must have provided a "minimum level of quality." Memo 21 (citing *American Suzuki Motor Co., v. Superior Court*, 37 Cal. App. 4th 1291, 1295-96 (1995)). GM misconstrues the nature of a latent defect when it

argues that "neither plaintiff alleges any engine malfunction within the implied warranty period of one year from the date of sale." Memo 21.

Plaintiffs allege that the Defect was latent and existed at the time the Class Vehicles were sold. "[T]he Class Vehicles and their engines, *at the time of sale* and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation." FAC ¶ 205 (emphasis added); *see also id.* at ¶¶ 16, 175, 177, 178, 190 (alleging GM's pre-sale knowledge of the Defect). Plaintiffs need not allege manifestation of the Defect to state a claim for relief. *See Mexia v. Rinker Boat Co., Inc*., 174 Cal. App. 4th 1297, 1305 (2009). "Indeed, undisclosed latent defects . . . are the very evil that the implied warranty of merchantability was designed to remedy. In the case of a latent defect, a product is rendered unmerchantable, and the warranty of merchantability is breached, by the existence of the unseen defect, not by its subsequent discovery." *Id.* (citations and internal quotation marks omitted).

> Although *Mexia* initially received a mixed reception from federal district courts, the Ninth Circuit has held that "[a]bsent convincing evidence that the California Supreme Court would decide the issue in *Mexia* differently, its rule that § 1791.1 'does not create a deadline for discovering latent defects or for giving notice to the seller,' 95 Cal. Rptr. 3d at 288, must be followed." *Daniel*, 806 F.3d at 1223 (reversing a grant of summary judgment against several plaintiffs based on the district court's determination that they failed to present evidence that their vehicles became unmerchantable during the warranty period).

*In re Seagate Tech. LLC Litig*., No. 16-cv-00523-JCS, 2017 U.S. Dist. LEXIS 137270, at *42-43 (N.D. Cal. Aug. 25, 2017); *see also Philips v. Ford Motor Co*., No. 14-CV-02989-LHK, 2016 U.S. Dist. LEXIS 58954, at *26-27 (N.D. Cal. May 3, 2016) ("In response to the panel decision in *Daniel*, Ford filed, on December 16, 2015, a petition for panel rehearing or for rehearing *en banc*. Ford's petition included a request for certification to the California Supreme Court. On January 8, 2016, the *Daniel* panel unanimously decided to deny Ford's petition for panel rehearing. Additionally, '[t]he full [Ninth Circuit was] advised of the petition for rehearing *en banc* and no judge of the court . . . requested a vote on the petition.'") (citations omitted).

For these reasons, Plaintiffs need not allege the manifestation of the Defect within a certain time period, because they have sufficiently alleged that the Defect existed regardless.

**B.     The Implied Warranty Claims Are Not Time-Barred.**

GM argues Plaintiffs' implied warranty claims are barred by a four-year statute of limitations. Memo 22-23. Plaintiffs assert that these claims are timely because the statute of limitations was tolled by GM's fraudulent—and active—concealment of the Defect. Cal. Com. Code § 2725(4); *Gerstle v. Am. Honda Motor Co.*, No. 16-cv-04384-JST, 2017 U.S. Dist. LEXIS 100580, at *33 (N.D. Cal. June 28, 2017); *Philips,* 2016 U.S. Dist. LEXIS 58954, at *44-45 ("Several courts have determined that fraudulent concealment tolling applies to claims brought under the Song-Beverly Act.") (analyzing cases).

To properly allege tolling of their implied warranty claims, Plaintiffs here must have: "(1) plead[ed] with particularity the facts giving rise to the fraudulent concealment claim and [have] (2) demonstrated that [they] used due diligence in an attempt to uncover the facts." *Philips*, 2016 U.S. Dist. LEXIS 58954, at *48 (quoting *Allen v. Similasan Corp.*, 96 F. Supp. 3d 1063, 1071 (S.D. Cal. 2015)). As stated above, Plaintiffs have made sufficient allegations as to fraudulent concealment as required by *Herremans*. *See supra* Section II.C. Plaintiffs have also properly alleged their due diligence in trying to uncover the facts. *See supra* Section II.D. These allegations are also sufficient. *Philips*, 2016 U.S. Dist. LEXIS 58954, at *49. ("As to the second requirement for fraudulent concealment tolling, California Plaintiffs allege that [a plaintiff]'s vehicle first experienced issues in October 2014, at which point [the plaintiff] took her vehicle in for service at a local Ford dealership. [The plaintiff]'s actions thus demonstrate 'due diligence' in uncovering 'the [pertinent] facts.'") (citations omitted).[10]

---

[10] Moreover, even without tolling, contrary to GM's argument, Peterson's implied warranty claim under Song-Beverly was timely filed no later than December 14, 2017, less than five years (one-year duration of Song-Beverly implied warranty plus four-year UCC statute of limitations) after her purchase of her vehicle in late December 2012. *See Daniel,* 806 F.3d at 1222 (quoting *Mexia*). Moreover, GM ignores that each Plaintiffs' claims was tolled for approximately 15 months based on the pendency of the

## IV. PLAINTIFFS SUFFICIENTLY ALLEGE THEIR LIMITED NATIONWIDE CLASS CLAIMS.

### A. Plaintiffs Sufficiently Allege Individual Standing to Pursue Their Nationwide Claims.

GM prematurely attacks Plaintiffs' standing to represent a nationwide class on the claims for breach of written warranties under the Magnuson-Moss Warranty Act (First Cause of Action) and express warranties under common law (Fifth Cause of Action) in its Rule 12 motion. Memo 23-24. Whether a named plaintiff may properly pursue the claims of absent Class Members is a question best raised and resolved under Rule 23 during the class certification stage.

> There are two competing approaches to the issue of class representative standing at the pleading stage. The standing principle, when applied, holds that a class representative lacks standing to pursue claims on behalf of the entire class if that individual did not suffer injuries "precisely analogous" to the other class members. Newberg on Class Actions § 2:6 (5th ed.). On the other hand, the class certification approach finds that once the named plaintiff establishes individual standing to bring a claim, the court "approach[es] the disjuncture as an issue of class certification, not standing." *Id.*
>
> This Court adopts the class certification approach. *See Clancy*, 308 F.R.D. at 571 ("applying the concept of standing to dismiss proposed class action allegations is a category mistake"). Thus, *21st Amendment's motion to dismiss for Peacock's lack of standing to bring claims on behalf of a nationwide class is denied without prejudice.* 21st Amendment is free to raise these arguments again at the class certification stage.

*Peacock v. The 21st Amendment Brewery Cafe, LLC*, No. 17-cv-01918-JST, 2018 U.S. Dist. LEXIS 7537, at *29-30 (N.D. Cal. Jan. 17, 2018) (emphasis added).

Even if the Court feels it is appropriate to resolve this issue at this stage of the litigation, Plaintiffs have properly alleged standing to withstand scrutiny under Rule 12, as the inquiry at this stage only concerns the named plaintiff's standing. *Id.* at *29; *Stearns v. Ticketmaster Corp.,* 655 F.3d 1013, 1021 (9th Cir. 2011) ("[O]ur [standing] law keys on the representative party, not all of the class members, and has done so for many years."); *Bates v. United Parcel Serv., Inc.,* 511 F.3d 974, 985 (9th Cir. 2007) (*en banc*) ("In a class action, standing is satisfied if at least one named plaintiff meets the requirements.

*Parenteau* class action, which covered this same Defect before its dismissal on a non-class basis. *See American Pipe Const. Co. v. Utah*, 414 U.S. 538, 554 (1974).

. . . Thus, we consider only whether at least one named plaintiff satisfies the standing requirements . . . ."). Moreover, GM never appears to question each Plaintiff's individual standing. *See* Memo 23. ("All of the plaintiffs reside in California and purchased their vehicles here[.]"). Thus, at this stage of the litigation, Plaintiffs have sufficiently alleged standing to pursue their nationwide class claims.

### B. The Court May Properly Exercise Personal Jurisdiction.

GM also argues that this Court "lack[s] personal jurisdiction to adjudicate claims against GM brought by nonresidents who did not purchase vehicles or suffer injury in California" under *Bristol-Myers Squibb Co. v. Superior Court,* 137 S. Ct. 1773 (2017), Memo 24-25, even though that decision expressly concerned the jurisdiction of state—not federal—courts, *Bristol-Myers*, 137 S. Ct. at 1782, and the Court did *not* address whether its reasoning would apply to a class action matter. S*ee id.* at 1789 n.4 (Sotomayor, J., dissenting). *Bristol-Myers* was not a class action, but instead a mass action where more than six hundred  plaintiffs, most of whom were not California residents, filed an action in California state court asserting California state law claims. *Id.* at 1778. The drug alleged to have caused the plaintiffs' injuries was neither developed nor manufactured in California. *Id.* Bristol-Myers had not developed the allegedly deceptive marketing campaign in California, nor were these plaintiffs prescribed the drug, injured, or treated for their injuries in California. *Id*. Unsurprisingly, the U.S. Supreme Court held that the California courts lacked specific jurisdiction over the alleged claims. *Id*. at 1782. "It follows that the California courts cannot claim specific jurisdiction." *Id.*

First and foremost, *Bristol-Myers* is distinguishable because it involved dismissal of out-of-state plaintiffs who filed claims in a California court about claims that arose outside the state. No Plaintiffs in this case are from outside California; each of the named Plaintiffs is a California resident suing GM for a defect in vehicles they purchased in California. Accordingly, this Court unquestionably has personal jurisdiction over their claims, and the Motion should be denied. Moreover, whether or not the

named Plaintiffs here can adequately represent a class including the claims of out-of-state residents is a question for resolution under Rule 23, as to which *Bristol-Myers* is silent.[11]

While there is disagreement among the lower Courts about this issue, the decisions arising in this jurisdiction agree with Justice Sotomayor that *Bristol-Myers* does not prevent nationwide claims. *Fitzhenry-Russell v. Dr. Pepper Snapple Grp.*, No. 17-cv-00564 NC, 2017 U.S. Dist. LEXIS 155654, at *15 (N.D. Cal. Sep. 22, 2017) ("For all of its arguments, Dr. Pepper has not presented the Court with persuasive argument—much less binding law—compelling the extension of *Bristol-Myers* to class actions."); *Feller v. Transamerica Life Ins. Co.*, No. 2:16-cv-01378-CAS-AJW, 2017 U.S. Dist. LEXIS 206822, at *47-48 (C.D. Cal. Dec. 11, 2017) (distinguishing *Bristol-Myers* to determine "[t]he Court thus has personal jurisdiction over Transamerica as to all putative members in the National Class."). Other federal courts agree as with *In re Chinese-Manufactured Drywall Products Liability Litigation*, No. 09-2047, 2017 U.S. Dist. LEXIS 197612, at *31-61 (E.D. La. Nov. 28, 2017), where the district court conducted an extended analysis of whether *Bristol-Myers* applied to class actions, ultimately concluding, "*BMS* is not a change to controlling law regarding personal jurisdiction, class action, or agency relationship." *Id.* at *61. That court later reiterated its decision, "The Court has already held that BMS does not apply to this MDL, and now incorporates that prior ruling herein." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 09-2047, 2018 U.S. Dist. LEXIS 805, at *30 (E.D. La. Jan. 2, 2018); *accord*, *Branch v. Gov't Emples. Ins. Co.*, Case No. 3:16-cv-1010, 2018 U.S. Dist. LEXIS 4790, at *30-31 n.10 (E.D. Va. Jan. 10, 2018); *Day v. Air Methods Corp.*, Civil Action No. 5: 17-183-DCR, 2017 U.S. Dist. LEXIS 174693, at *6 n.1 (E.D. Ky. Oct. 23, 2017). Therefore, in light of the decisions interpreting *Bristol-Myers* in this jurisdiction, Plaintiffs have properly alleged standing and jurisdiction to assert claims on behalf of a nationwide class.

---

[11] As noted in the dissent, "[t]he Court today does not confront the question whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." *Id.* at 1789 n.4 (Sotomayor, J., dissenting).

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny GM's Motion to Dismiss in its entirety.[12]

Dated: February 8, 2018                                  Respectfully submitted,

                                                         s/Gregory F. Coleman
                                                         Gregory F. Coleman (*pro hac vice*)
                                                         Adam A. Edwards (*pro hac vice*)
                                                         Mark E. Silvey (*pro hac vice*)
                                                         GREG COLEMAN LAW PC
                                                         First Tennessee Plaza
                                                         800 S. Gay Street, Suite 1100
                                                         Knoxville, TN 37929
                                                         Telephone: (865) 247-0080
                                                         Facsimile: (865) 522-0049
                                                         greg@gregcolemanlaw.com
                                                         adam@gregcolemanlaw.com
                                                         mark@gregcolemanlaw.com

                                                         Robert Ahdoot, SBN 172098
                                                         rahdoot@ahdootwolfson.com
                                                         AHDOOT & WOLFSON, PC
                                                         10728 Lindbrook Drive
                                                         Los Angeles, California 90024
                                                         Telephone: (310) 474-9111
                                                         Facsimile: (310) 474-8585

                                                         Daniel K. Bryson*
                                                         Dan@wbmllp.com
                                                         J. Hunter Bryson*
                                                         Hunter@wbmllp.com
                                                         WHITFIELD BRYSON & MASON LLP
                                                         900 W. Morgan St.
                                                         Raleigh, NC 27603
                                                         Telephone: (919) 600-5000
                                                         Facsimile: (919) 600-5035

                                                         * by *pro hac vice*

                                                         Attorneys for Plaintiffs

---

[12] Should the Court grant GM's motion as to any particular claims, Plaintiffs respectfully request that they be allowed the opportunity to amend to correct any perceived deficiencies.

## CERTIFICATE OF SERVICE

I, Gregory F. Coleman, counsel for Plaintiffs hereby certify that on February 8, 2018, I caused to be filed true and correct copies of the foregoing electronically using the Court's electronic case filing (CM/ECF) system, which automatically generated and sent a notice of electronic filing to the e-mail addresses of all counsel of record.

Dated: February 8, 2018.

s/ Gregory F. Coleman
Gregory F. Coleman (*pro hac vice*)
greg@gregcolemanlaw.com